MILAGROS MEDINA, Indiv. and as Independent Adm'r of the Estate of Jose A. Garcia III, a Minor, Deceased, Plaintiff-Appellant and Cross-Appellee, v. THE CITY OF CHICAGO *et al.*, Defendants-Appellees and Cross-Appellants.

First District (3rd Division)   Nos. 1—90—2406, 1—90—2415 cons.

Opinion filed November 18, 1992.

Robert J. Cooney, Jr., of Cooney & Conway, of Chicago, for appellant.

Kelly R. Welsh, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Jean Dobrer, Assistant Corporation Counsel, of counsel), for appellees.

JUSTICE CERDA delivered the opinion of the court:

On May 6, 1983, Chicago police officer Eugene Richmond shot and killed Jose A. Garcia III, who was 17 years old. Garcia was survived by an eight-month-old son, a sister, and his mother, Milagros Medina. Plaintiff Medina filed this action as administrator of her son's estate, bringing Illinois wrongful death and survival and Federal civil rights claims against Officer Eugene Richmond and the City of Chicago (the City). The trial court directed a verdict in favor of the City on the 42 U.S.C. §1983 (1988) claim. The jury returned a verdict against both defendants under the Wrongful Death Act (Ill. Rev. Stat. 1991, ch. 70, pars. 1, 2) and Survival Act (Ill. Rev. Stat. 1991, ch. 110½, par. 27—6) for willful and wanton misconduct, awarding total compensatory damages of $704,000. Because the jury also found that Garcia was 50% contributorily negligent, the trial court entered judgment in the amount of $352,000. The jury found in favor of defendant Richmond on the Federal civil rights claim. All post-trial motions were denied except that the trial court reduced the damages for Garcia's conscious pain and suffering from $100,000 to $50,000. We affirm in part and reverse in part.

On appeal, plaintiff asserts that (1) Garcia's contributory negligence cannot reduce his estate's recovery under the Wrongful Death and Survival Acts; (2) the trial court erred in remitting the estate's award for conscious pain and suffering; (3) the trial court erred in denying plaintiff's post-trial motion seeking judgment in her favor notwithstanding the verdict for the Federal civil rights claims because defendants were found guilty of willful and wanton misconduct; and (4) the trial court erred in denying plaintiff's motion for a new trial where certain evidentiary rulings were in error. Defendants assert on appeal that the evidence does not support the jury's finding that Officer Richmond's conduct was willful and wanton.

On May 6, 1983, Stuart Majesky received a series of phone calls from someone who offered to return his son's stolen automobile in exchange for $100. The caller told Majesky that he had obtained the car keys from someone he had met while at Cook County jail. After a meeting was arranged with the caller, Majesky contacted Officer Richmond, who was Majesky's niece's ex-husband. Majesky asked Richmond if the police could help him get the stolen car back. Richmond consulted his supervisor, Sergeant Ralph Chiczewski, who approved the police assistance.

Majesky. met with several plainclothes police officers to plan the meeting. The police decided that Majesky would go with Richmond, who would pose as his son. According to the plan, police officers would park at designated areas near the McDonald's parking lot at 2701 North Milwaukee Avenue, Chicago, before Majesky and Richmond arrived. Once Majesky paid the caller, the officers would arrest the caller.

When Majesky drove into the McDonald's parking lot, Garcia came up to the car and asked, "[A]re you here about the Nova?" After Majesky parked his car, Garcia approached the driver's side and indicated that he would have to take them to the car, which was located a couple of blocks away.

Majesky got out of the car and stood near his car's front left fender. Garcia stood a foot in front of him. Richmond put his hand on Garcia's shoulder and told him that he was under arrest. At that time, Garcia twisted, made a step on the curb, and tried to leap on the guardrail. As he did so, he dragged Richmond, who was still hanging onto Garcia's jacket, against the curb. Richmond stumbled, fell forward, and his gun discharged. After the gun went off, Garcia fell off the guardrail.

Majesky testified that Richmond never put Garcia's hand on the car or patted him down. Garcia said nothing after Richmond announced that he was a police officer. Majesky further stated that he never saw Garcia swing or hit Richmond and Richmond had his gun up in the air at all times. Majesky did not observe any gun, knife, or weapon on Garcia prior to the shooting.

After Garcia was shot once in the back with the .357 revolver, he took a few steps toward the alley and fell face forward. As he lay there, Garcia was still breathing and said, "I'm shot." Other police officers ran to the scene when they heard the gunshot. Officer John Mulligan testified that Garcia was conscious, moaning, and still breathing when he arrived. Sergeant Chiczewski called for an ambulance, which arrived within a couple of minutes. By the time the ambulance arrived, Garcia was dead.

Officer Richmond testified that he got out of the car and walked around the rear of the car. Because Richmond thought Garcia might be armed and getting ready to run away, he decided to arrest Garcia. He unholstered his .357 revolver as he got to the driver's side, approached Garcia from behind with his gun in his right hand, and grasped Garcia's left shoulder with his left hand. Richmond announced that he was a police officer and Garcia was under arrest. According to Richmond, Garcia put his hands up and then down on the car. Richmond stated that his gun was held near his side in a downward position.

Richmond further testified that Garcia said, "I knew this was going to happen," then hit Richmond in the face and neck with the back of his right arm. Richmond stated that Garcia began to lunge forward toward the adjacent alley. As Garcia jumped on top of the guardrail separating the alley from the parking lot curb, Garcia fell forward and his jacket came off.

Richmond stated that he tripped over the curb in front of the guardrail while he was holding Garcia by the shoulder. Falling to his knees, Richmond grabbed the guardrail with his right hand and his gun discharged.

Richmond claimed that there was lawful justification for the shooting because Garcia hit him, committing the forcible felony of aggravated battery, and was trying to escape. His firearm discharge report, however, listed the offenses that Garcia committed as auto theft/possession of a stolen motor vehicle, which are not forcible felonies. Aggravated battery was not listed. The report also stated that the officers were investigating a burglary in which an auto was taken. Richmond admitted that the superintendent of police's general order in effect on the day of the shooting would not have permitted the conscious use of deadly force in this shooting incident and he would not have been justified in using deadly force to consciously shoot Garcia under the circumstances that night.

Chicago police firearms expert Ernest Warner examined Officer Richmond's .357 revolver, ammunition, and three metal fragments from Garcia's body. The gun, which was in good operating condition, had various safety features that prevented the weapon from discharging unless the trigger was held in a rearward position as the hammer came forward. The manufacturer considers the revolver's trigger pull as an additional safety feature. When the revolver is not cocked, the trigger pull is 12 pounds. If cocked, the trigger pull is four pounds.

It was Warner's expert opinion that Richmond's finger pulled the trigger in a rearward position. The weapon would not discharge if it were dropped to the ground or if it came into violent contact with an

object unless the trigger is held in the rearward position as the hammer completes its fall forward. Finally, Warner testified, in his 24 years with the police department, he had never encountered a situation where it was not a person holding the trigger in a rearward position that discharged the weapon.

Dr. Stein, the Cook County chief medical examiner, performed the autopsy. There was a bullet hole in Garcia's back, 16½ inches below the top of his head and five inches to the right of his spine. The bullet entrance wound was surrounded by gunshot residue. It was Dr. Stein's opinion that Garcia was shot from a distance of four to five feet.

The bullet's path was from below, upwards, exiting at his upper jaw. The bullet entrance wound was consistent with Garcia being shot while bent over and in a higher position than the gun. Toxology reports indicated that there were no drugs or alcohol in Garcia's body at the time of his death. The cause of death was a gunshot wound to the back and vomited lung.

Robert A. Williams testified outside the presence of the jury in an offer of proof. In May 1983, Williams was the assistant deputy superintendent of police. When a police officer's weapon was discharged, he conducted an investigation. In connection with this shooting, Williams interviewed Officer Richmond and prepared a police report. Although Williams had no recollection of the incident and the report did not refresh his memory, the report he prepared on May 7, 1983, was based on facts reported to him at the time. Williams stated that at least some of the facts were supplied by Richmond and the conclusions and opinions Williams made were correct at the time he made the report.

The report concluded that the "incident should be classified as accidental [but was] a tragedy that could have been avoided. There [did] not appear to be any compelling reason for [Richmond] to have his finger on the trigger of the gun during the arrest process."

Phyllis McClinton, who was the assistant manager at the McDonald's restaurant, testified that four plainclothes police officers came into the restaurant about 45 minutes after the shooting and asked to use the public telephone in the back room. While McClinton was sitting at the desk close to the back room, she heard a conversation between two of the police officers. When the shorter officer said, "I messed up. I shot him. I told him to halt. He didn't halt, so I shot him," the other officer replied, "We'll say that you were tussling with him when the gun went off." The first officer protested, "[N]o, I shot him," but the other one responded, "We'll just say that you were tussling with him and the gun went off. It will be okay." The first officer then agreed. McClinton could not positively identify Richmond in court and Richmond denied being in

the McDonald's restaurant after the shooting. He also denied making any of the statements McClinton testified to overhearing.

The court granted the City's motion for a directed verdict on the Federal civil rights claim and the jury found that Richmond was not liable on the Federal claim. The jury, however, decided against both defendants on the State claims based on willful and wanton misconduct and assessed damages of $704,000. The jury also found that Garcia was 50% contributorily negligent. The jury answered special interrogatories, finding that Richmond did not intentionally shoot Garcia, but that his actions showed an utter indifference to or conscious disregard for the safety of others. The court entered a judgment of $352,000 against defendants.

Both sides filed post-trial motions, all of which were denied except that the trial court reduced the pain and suffering award to $50,000 and entered judgment for plaintiff for $327,000. The trial court stated that the award of $100,000 for Garcia's conscious pain and suffering was excessive and shocked its conscience, given the lack of evidence of conscious pain and suffering during the few seconds that Garcia survived after the shooting. Both sides appealed.

On appeal, defendants assert that the judgment against them on the State wrongful death claim should be reversed because the evidence does not support a finding of willful and wanton misconduct. Furthermore, defendants contend, the jury's finding that Officer Richmond did not intend to fire his weapon was inconsistent with its finding of willful and wanton misconduct. Defendants claim that Officer Richmond's unholstering his weapon and placing it at the ready position was reasonable under the circumstances, not willful and wanton misconduct, because he drew his weapon to arrest Garcia in anticipation of possible trouble from Garcia. Defendants state that it was only when Garcia tried to resist arrest that Richmond tripped and accidentally discharged his weapon.

To support their proposition that a police officer's actions are not wrongful simply because they involve a risk that things may go wrong, defendants rely on *Pleasant v. Zamieski* (6th Cir. 1990), 895 F.2d 272, 278, which affirmed the jury's verdict for the defendant police officer whose gun accidentally discharged, fatally wounding a suspect attempting to flee from arrest. The court held that the defendant police officer's actions, including drawing his gun as he approached the suspect, were not objectively unreasonable. *Pleasant*, 895 F.2d at 277.

The *Pleasant* case, however, is distinguishable. Reviewing the factual determinations of the jury, the court ruled that its verdict was not clearly erroneous. (*Pleasant*, 895 F.2d at 275.) The theory of the case

was that it was an accidental shooting caused by the negligent use of a handgun in the course of apprehending a suspected felon. (*Pleasant*, 895 F.2d at 275.) Furthermore, the plaintiff conceded that the shooting death of her son was accidental and negligent, not the deliberate use of deadly force. *Pleasant*, 895 F. 2d at 275.

In her argument, plaintiff relies on *Glover v. City of Chicago* (1982), 106 Ill. App. 3d 1066, which reversed directed verdicts in favor of the defendant police officers. After being told by the decedent's ex-wife that he was armed at her apartment, three police officers went to arrest the decedent with a warrant. As the policemen went up the outside staircase, the first police officer drew his gun. He saw someone in a second-floor window, heard gunfire, and saw the second police officer fall to the ground with a bullet wound in his chest. Thinking they were being fired on, the first policeman fired through the closed door of the apartment. In reality, the third police officer had dropped his revolver as he took it from his holster. It discharged, and the bullet wounded the second policeman. *Glover*, 106 Ill. App. 3d at 1068-69.

The *Glover* court held that a jury could conclude that the third officer was guilty of willful and wanton conduct when he took his gun from his shoulder holster in such a way that allowed the gun to slip from his hand, fall to the ground, and discharge, hitting the other police officer. (*Glover*, 106 Ill. App. 3d at 1075.) Furthermore, the court found, a jury could also conclude that the first police officer was aware of the implicit danger in firing his gun into a closed door of an occupied apartment and that he chose to ignore the natural and probable result of his actions. *Glover*, 106 Ill. App. 3d at 1075.

■ Whether defendants' acts amounted to willful and wanton misconduct is a question of fact to be resolved by the jury based on the circumstances of the case. (*Downing v. United Auto Racing Association* (1991), 211 Ill. App. 3d 877, 884.) Illinois law defines willful and wanton conduct as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others." (Ill. Rev. Stat. 1991, ch. 85, par. 1—210.) A person is guilty of willful and wanton conduct when he ignores known or plainly observable dangerous conditions and does something that will naturally and probably result in injury to another. (*Glover*, 106 Ill. App. 3d at 1075.) The statute does not require willful and wanton misconduct to be an intentional act, but may be an act committed under circumstances exhibiting a reckless disregard for the safety of others. *O'Brien v. Township High School District 214* (1980), 83 Ill. 2d 462, 469.

■ The jury's verdict was supported by the evidence. The evidence showed that Richmond drew his gun, put his finger on the trigger, and approached Garcia. The jury could have found that Garcia did not hit or say anything to Richmond prior to the shooting, had not committed any crime up to that point, and did not pose a threat to Richmond.

In response to special interrogatories, the jury specifically found that "Eugene Richmond's actions showed an utter indifference to or a conscious disregard for the safety of others," not that he accidentally shot Garcia. Moreover, the police firearms expert, Ernest Warner, opined that the gun did not discharge accidentally. Warner stated that the gun would not have discharged merely because it came into contact with the guardrail. Only a person's finger or hand could discharge the weapon. The gun will not discharge unless the trigger is held in a rearward position. The police handbook indicated that actions such as Officer Richmond's were not justified.

Determinations of credibility of witnesses, the weight to be given to their testimony, and the reasonable inferences to be drawn from the evidence are exclusively within the province of the jury. (*People v. Jimerson* (1989), 127 Ill. 2d 12, 43.) Therefore, the jury could reasonably have found that Richmond unholstered his service revolver during the arrest process and placed his finger on the gun's trigger in direct violation of departmental regulations and guidelines governing the use of deadly force by Chicago police officers. As the trial judge stated in denying defendants' post-trial relief:

> "[T]he jury could very easily find that while Richmond did not act intentionally in shooting Garcia, he did act wilfully and wantonly, without regard for the life and safety of Jose Garcia.
>
> The jury could easily have found that Richmond was reckless when he approached Garcia with his finger on the trigger. *** I think the jury could find all [the evidence] adds up to reckless conduct without intentional conduct, so there isn't any inherent inconsistency."

Defendants also argue that the test for willful and wanton misconduct by police officers should be more stringent than for others because police officers are often faced with fast-moving and unpredictable circumstances. Defendants are asking this court to change the standard for willful and wanton misconduct by police officers. We decline to do so.

Most of defendants' argument is a policy argument. They extensively cite from police manuals and other literature that is not part of the record. Defendants contend that not reversing this decision will immobilize police officers in enforcing the law and making arrests. We disagree.

Affirming this case does not mean that the police may not arrive at the scene of a kidnapping, rape, burglary, or bank robbery with their weapons unholstered. It is a matter of degree. This verdict does not disarm the arresting officer, obscure the qualitative difference between negligence and willful and wanton misconduct, or undermine the protections of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1991, ch. 85, par. 1—101 *et seq.*).

It is the jury's function to determine the preponderance of the evidence, and a reviewing court will reverse only if that determination is against the manifest weight of the evidence. (*Lynch v. Board of Education of Collinsville Community Unit District No. 10* (1980), 82 Ill. 2d 415, 423.) The jury's verdict was not against the manifest weight of the evidence and is affirmed.

■ Next, plaintiff asserts that Garcia's negligence cannot reduce his estate's recovery under the Wrongful Death and Survival Acts. There are two issues that must be addressed. First is whether Garcia's negligence can reduce the damages where defendants were found guilty of willful and wanton misconduct. Second is whether the loss of consortium award can be reduced by Garcia's negligence.

Recently, the Illinois Supreme Court ruled in *Burke v. 12 Rothschild's Liquor Mart, Inc.* (1992), 148 Ill. 2d 429, 451-52, that a plaintiff's ordinary negligence cannot reduce damages recovered for the defendant's willful and wanton misconduct. The court based its decision on the distinctions between the culpability involved in ordinary negligence and willful and wanton misconduct. *Burke*, 148 Ill. 2d at 451-52.

In accordance with this recent decision, we reverse the trial court's ruling. Because Garcia's negligence cannot be considered to reduce the damages award, based on willful and wanton misconduct, the full jury award of $704,000 is reinstated.

■ Similarly, a loss of consortium award cannot be reduced by Garcia's negligence. Even though the Illinois Supreme Court concluded that an injured spouse's negligence can be compared to the defendant's negligence for a loss of consortium award (*Blagg v. Illinois F.W.D. Truck & Equipment Co.* (1991), 143 Ill. 2d 188, 199), that case is not applicable here. *Blagg* involved negligence by the defendant while this case involves the willful and wanton misconduct of defendants. Consequently, the *Burke* case controls the loss of consortium award. Since Garcia's negligence cannot be considered to reduce the loss of consortium award, the full jury award is reinstated.

Next, plaintiff asserts that the trial court erred in remitting the estate's award for conscious pain and suffering. Plaintiff argues that the jury arrived at the damages award after careful and considered

deliberation, applying its own perceptions, observations, and life experiences to the evidence when it determined the reasonable compensation for pain and suffering. As part of the itemized verdict, the jury assessed the estate's total damages for Garcia's conscious pain and suffering in the amount of $100,000. The trial court reduced that amount to $50,000.

Plaintiff relies on *De Young v. Alpha Construction Co.* (1989), 186 Ill. App. 3d 758, where the court affirmed a $3.6 million award to the estate of a 75-year-old woman in a wrongful death action. In denying the defendants' post-trial motion, the trial court emphasized that the determination of damages was the province of the jury, which was careful and deliberate in its attention to the evidence.

■ The granting of the remittitur is appropriate only when the damages awarded are beyond the flexible range of what is reasonably supported by the facts. (*Guerrero v. City of Chicago* (1983), 117 Ill. App. 3d 348, 352.) The award of damages in a wrongful death action is a matter for the jury's determination, and a court will not substitute its judgment for that of the jury unless the verdict shocks the judicial conscience. (*De Young*, 186 Ill. App. 3d at 767.) Courts have allowed claims of conscious pain and suffering to be determined by the jury where extremely short time intervals between injury and death occur. (*In re Air Crash Disaster Near Chicago on May 25, 1979* (N.D. Ill. 1980), 507 F. Supp. 21, 24.) A jury verdict should not be set aside unless it is evidently the result of passion or prejudice or where it bears no relation to the pecuniary injuries of the decedent's descendants. *Glover*, 106 Ill. App. 3d at 1076.

■ The trial judge's finding that there were only a few seconds of life after the shooting and that there was no evidence of pain and suffering other than the realization that Garcia was shot was against the manifest weight of the evidence. The evidence showed that Garcia lived for a few minutes, not a few seconds, after being shot in the back with a .357 gun with a hollow point ammunition that exited through his jaw. When Richmond approached Garcia a few minutes after the shooting, Garcia told him, "I'm shot." Officer Whiteman testified that Garcia was moving and breathing, although he did not appear conscious. Officer Mulligan testified that Garcia was moaning and breathing and apparently conscious a few minutes after the shooting. Sergeant Chiczewski arrived at the scene a few minutes after the shooting, then went to the street corner to call for an ambulance, which arrived three minutes later. By the time the ambulance arrived, Garcia was dead. There was evidence that Garcia was moaning, moving, and breathing until the ambulance arrived. There-

fore, we reverse the remittitur. The jury's determination of the damages for conscious pain and suffering should not have been reduced by the trial court and is reinstated.

Plaintiff then asserts that the trial court erred in denying her post-trial motion for judgment notwithstanding the verdict on the Federal civil rights claims because defendants were found guilty of willful and wanton misconduct. Plaintiff claims that the special interrogatory finding that Richmond acted with utter indifference to or conscious disregard for Garcia's safety indicates that plaintiff proved that defendant violated Garcia's fourth amendment right to not be subjected to unreasonable or excessive force while being arrested.

■ The United States Supreme Court established that all section 1983 excessive force claims against law enforcement officers in the course of an arrest should be analyzed under the fourth amendment's reasonableness standard. (*Graham v. Connor* (1989), 490 U.S. 386, 395, 104 L. Ed. 2d 443, 454, 109 S. Ct. 1865, 1871.) The nature and quality of the intrusion on a person's fourth amendment interests is balanced with the countervailing governmental interests at stake. (*Graham*, 490 U.S. at 396, 104 L. Ed. 2d at 455, 109 S. Ct. at 1871.) Because there is no precise definition of reasonableness under the fourth amendment, careful attention to the specific facts and circumstances of each case is necessary, including the severity of the crime involved, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade an arrest by flight. *Graham*, 490 U.S. at 396, 104 L. Ed. 2d at 455, 109 S. Ct. at 1871-72.

There is no inconsistency between the Federal claim and State claim verdicts. Two different standards are involved. The jury found that Richmond did not intentionally shoot Garcia, but was willful and wanton in that he consciously disregarded the safety of others. This court does not have to suggest how it would have decided reasonableness under the fourth amendment. The jury has decided the issue.

The trial court did not err in denying plaintiff's motion for judgment notwithstanding the verdict since the evidence does not so overwhelmingly favor plaintiff that the verdict cannot stand. (*Madigan v. Browning Ferris Industries* (1978), 61 Ill. App. 3d 842, 845.) Therefore, the trial court's denial of a judgment notwithstanding the verdict on the Federal claim is affirmed.

■ Finally, plaintiff asserts that the trial court made various evidentiary errors. First, she claims that the trial court erred in not admitting Williams' testimony or his report as past recollection re-

corded. Plaintiff argues that the offer of proof revealed that Williams had investigated the shooting, concluding that it could have been avoided because there was no reason for Richmond's finger to be on the trigger during the arrest process.

Defendants respond that the testimony was properly excluded as nonexpert opinion testimony based on speculation and because plaintiff failed to lay a foundation establishing Williams' knowledge of the facts that formed the basis of his opinion.

To admit a police record into evidence under the doctrine of past recollection recorded, (1) the witness must have no independent recollection of the occurrence or event recorded; (2) the report must fail to refresh the witness' recollection; (3) the facts in the report must have been recorded at the time of the occurrence or soon thereafter; and (4) the truth and accuracy of the report must be established. (*Loughnane v. City of Chicago* (1989), 188 Ill. App. 3d 1078, 1082.) Any alleged inaccuracies in the report affect the weight given the report but do not render it inadmissible. (*Loughnane*, 188 Ill. App. 3d at 1084-85.) Credibility of a report is different from its admissibility. *Minor v. City of Chicago* (1981), 101 Ill. App. 3d 823, 826.

The report should have been introduced as past recollection recorded. All four requirements were established. Any alleged inaccuracies go to the credibility and weight given to the document, not to its admissibility. This error, however, is not reversible error because it did not prejudice plaintiff or unduly affect the outcome of the trial. *Brown v. Arco Petroleum Products Co.* (1989), 195 Ill. App. 3d 563, 571.

We reject plaintiff's argument that the report was admissible as an admission by a party opponent. The report was Williams' conclusion from a potpourri of information he received, including information from Richmond. It could not be determined, however, which information was supplied by Richmond because there was no procedure to later determine the source of the information.

■ Next, plaintiff claims that excluding evidence that Garcia was unarmed at the time of the fatal shooting was error. Plaintiff argues that *Sherrod v. Berry* (7th Cir. 1988), 856 F.2d 802, 805, which the trial court relied on in its ruling, is inapplicable because its issue was whether the police officer consciously shot a suspect who had just committed a robbery, who was reaching into his coat as if he were going for a gun, and who the officer believed was armed and dangerous.

The trial court's reliance on *Sherrod* was proper. *Sherrod* held that the jury should judge the officer's conduct based on the infor-

mation he possessed at the time of the incident. (*Sherrod*, 856 F.2d at 805.) Although a Seventh Circuit decision is not controlling, it can be used as persuasive authority. The court relied on the United States Supreme Court's decision in *Tennessee v. Garner* (1985), 471 U.S. 1, 85 L. Ed. 2d 1, 105 S. Ct. 1694, which reviewed the totality of the circumstances known to the police officer at the time of the incident in determining whether the officer acted reasonably. At the time of the incident, Richmond did not know if Garcia was armed.

Finally, plaintiff claims that the trial court erred in admitting Richmond's testimony that he had been informed by Majesky that the caller had been in Cook County jail. Plaintiff relies on case law that establishes that evidence of an arrest, indictment, or actual commission of an offense cannot be used for impeachment purposes. (See *Knowles v. Panopoulos* (1977), 66 Ill. 2d 585; *People v. Montgomery* (1971), 47 Ill. 2d 510; *People v. Charleston* (1985), 132 Ill. App. 3d 769, 775; *People v. Phillips* (1970), 129 Ill. App. 2d 455.) Plaintiff also asserts that introduction of that evidence was unfairly prejudicial to Garcia.

The evidence was not admitted as impeachment against Garcia, but for the limited purpose of providing the information Richmond had at the time he drew his gun. Because the testimony was relevant to the jury's assessment of Richmond's conduct and the trial court gave limiting instructions, the evidence did not prejudice plaintiff. Therefore, the trial court did not err in admitting that testimony.

Based on the foregoing, we reverse the portion of the trial court's judgment reducing the damage award for Garcia's negligence, the conscious pain and suffering award, and the loss of consortium award. The total jury compensatory award of $704,000 should be entered. We affirm the portion concerning all other issues. This cause is remanded to the trial court for proceedings consistent with this opinion.

Affirmed in part; reversed and remanded in part.

RIZZI and TULLY, JJ., concur.