Eric HOLDER, Plaintiff,

v.

Anthony IVANJACK, A.D.S., Sgt. Patrick Minogue, Star # 1858, Sgt. Paul DeRosa, Star # 1458, P.O. Thomas Stack, Star # 6232, P.O. Harold Rodriquez, Star # 14532, P.O. Dominick Colucci, Star # 14466, P.O. John Bernath, Star # 18602, P.O. Richard Haljean, Star # 9860, P.O. Gary Cain, Star # 19432, P.O. Anthony Barsano, Star # 15728, P.O. Maher Suleiman, Star # 8242, P.O. Ronald Mieziere, Star # 10392, P.O. Christopher Strzalka, Star # 5358, P.O. David Hayes, Star # 19938, Lt. Jeffery Wilson, Star # 352, and The City of Chicago, Defendants.

No. 98 C 2837.

United States District Court, N.D. Illinois, Eastern Division.

March 15, 1999.

966

Corinth Bishop, II, East Chicago, IN, Bruce Nash, Chicago, IL, for Eric Holder, plaintiff.

Jeffrey Neil Given, Brian L. Crowe, City of Chicago, Law Department, Corporation Counsel, Chicago, IL, Allen Duarte, City of Chicago, Department of Law, Chicago, IL, for Anthony Ivanjack, defendant.

Thomas R. Samson, Michael Patrick Monahan, City of Chicago, Law Department Corporation Counsel, Chicago, IL, Kevin Joseph Powers, City of Chicago, Department of Law, Chicago, IL, for Patrick Minogue, Star, Paul Derosa, Thomas Stack, Harold Rodriguez, Dominick Colucci, John Bernath, Richard Haljean, Gary Cain, Anthony Barsano, Maher Suleiman and Ronald Mieziere, defendants.

Thomas R. Samson, Michael Patrick Monahan, City of Chicago, Law Department Corporation Counsel, Chicago, IL, Thomas Joseph Platt, Kevin Joseph Powers, M. David Weisman, City of Chicago, Department of Law, Chicago, IL, for Christopher Strzalka and David Hayes, defendant.

Jeffrey Neil Given, Brian L. Crowe, Allen Duarte, City of Chicago, Law Department Corporation Counsel, for City of Chicago, defendant.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court is defendants the individual police officers and the City of Chicago's joint motion to dismiss Counts IV, V, VI, VII, VIII, and IX of plaintiff Eric Holder's first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the court denies the individual police officers

and the City of Chicago's joint motion to dismiss.

## I. BACKGROUND

The complaint alleges the following facts which, for the purposes of ruling on this motion, are taken as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). At all relevant times, the City of Chicago ("City") employed plaintiff, Eric Holder ("Holder"), as a patrol officer and all the individual defendants as full-time police officers.

On or about July 10, 1997, the individual defendant police officers ("police officers") responded to a reported shooting incident. Upon their arrival on the scene, they encountered Holder. The police officers, while yelling obscenities at Holder, told him to leave the area. Holder, who was off duty, attempted to identify himself and to show his police badge. The police officers responded to Holder's attempt by informing him that they did not care who he was.

Holder then asked the police officers: "Why are you treating me this way? I am one of you."

In response, the police officers said: "You are not one of us. You're just a Nigger with a badge."

After this exchange, Sergeant Patrick Minogue ("Minogue") approached Holder. Holder tried again to explain his presence and to identify himself. Minogue responded to Holder's attempts by stating: "You ain't shit, fuck you and that badge. I am the sergeant, you are going to jail tonight." Minogue then ordered the other police officers to "take Holder down." At this point, all the police officers, except Sergeant Paul DeRosa and Officer Harold Rodriquez, attacked Holder. During the "take down," the police officers hit Holder in the head with a blunt object, threw him to the ground, and beat and kicked him in the

head and body. The police officers used their fists, feet, knees, night sticks, and flashlights to inflict pain and injuries on Holder.

After the attack, Holder requested medical attention which the police officers denied him. Later that evening, Holder was charged with two counts of battery of which a jury later found him not guilty.

On May 8, 1998, Holder filed a complaint with this court naming fifteen individual police officers and the City as defendants. Holder's complaint alleged violations of 42 U.S.C. § 1983 and Illinois tort law. On August 31, 1998, the City moved to dismiss Counts I, V and VII of the complaint. The court granted the City's motion on September 8, 1998 and gave Holder leave to file a first amended complaint by September 22, 1998. On September 21, 1998, Holder filed his first amended complaint. Holder's first amended complaint alleged the same violations of 42 U.S.C. § 1983 and Illinois tort law but terminated his claims against Anthony Ivanjack and Lieutenant Jeffery Wilson, two of the individual defendant police officers.

On October 15, 1998, the remaining individual police officers and the City filed this joint motion to dismiss Counts IV, V, VI, VII, VIII, and IX of Holder's first amended complaint. Counts IV and V are claims brought under Illinois law against the individual police officers and the City, respectively, for intentional infliction of emotional distress. Counts VI and VII[1] are claims brought under the Illinois Hate Crime Act against the individual police officers and the City, respectively. Finally, Counts VIII and IX are claims brought under Illinois law against two of the individual police officers and the City, respectively, for failing to protect Holder. This court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3)–(4), 1367.

---

1. Plaintiff mistakenly numbers his "Hate Crime" claim against the City as Count VIII, when in fact it should be Count VII.

## II. DISCUSSION

### A. Standard for deciding a Rule 12(b)(6) motion to dismiss

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Midwest Grinding Co. v. Spitz,* 976 F.2d 1016, 1019 (7th Cir.1992). If, when viewed in the light most favorable to the plaintiff, the complaint fails to state a claim upon which relief can be granted, the court must dismiss the case. *See* FED. R.CIV.P. 12(b)(6); *Gomez v. Illinois State Bd. of Educ.,* 811 F.2d 1030, 1039 (7th Cir.1987). However, the court may dismiss the complaint only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

■ Even under the liberal notice pleading standard of the Federal Rules of Civil Procedure, however, a complaint must include either direct or inferential allegations respecting all material elements of the claim asserted. *Perkins v. Silverstein,* 939 F.2d 463, 466 (7th Cir. 1991). Bare legal conclusions attached to narrated facts will not suffice. *Strauss v. City of Chicago,* 760 F.2d 765, 768 (7th Cir.1985).

### B. Counts IV and V—Intentional infliction of emotional distress

In Count IV, Holder alleges that the individual police officers intentionally inflicted emotional distress on him. In Count V, Holder is attempting to hold the City liable for the individual police officers' actions pursuant to the theory of *respondeat superior.* Both the individual police officers and the City argue that Counts IV

and V, intentional infliction of emotional distress ("IIED"), fail to state a claim.

■ First, the individual police officers and the City allege that Holder's claims fail because Holder has failed to distinguish which individual police officers did which act. However, Holder is not required to draw factual distinctions among each individual police officer at this procedural stage of the litigation. FED.R.CIV.P. 8; *see Messina v. Mazzeo,* 854 F.Supp. 116, 126 (E.D.N.Y.1994). It is enough, that Holder has sufficiently put the individual police officers on notice of the nature of his IIED allegation. *See Messina,* 854 F.Supp. at 126. Thus, this basis for dismissing Holder's IIED claims fail.

■ Next, the individual police officers and the City allege that Holder fails to state a claim for IIED because Holder has failed to allege the proper severity of conduct. The elements of a cause of action for IIED in Illinois are as follows:

> First, the conduct involved must be truly extreme and outrageous. Second, the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that this conduct will cause severe emotional distress. Third, the conduct must in fact cause severe emotional distress.

*Schroeder v. Lufthansa German Airlines,* 875 F.2d 613, 623 (7th Cir.1989).

■ This court will only address the conduct element of Holder's IIED claims because the individual police officers and the City only contend that Holder did not sufficiently allege extreme and outrageous conduct.[2] To be extreme and outrageous, the conduct involved does not need to result in physical injury or the threat of physical injury. *Id.* However, it must be more than "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *McGrath v. Fahey,* 126 Ill.2d 78, 127 Ill.Dec. 724, 533 N.E.2d 806,

---

**2.** The individual police officers and the City concede in their reply brief that Holder has

sufficiently alleged intent and causation.

809 (Ill.1988). The conduct "must be so extreme and outrageous that it goes beyond all possible bounds of decency." *Schroeder*, 875 F.2d at 623. The court determines whether the conduct is extreme and outrageous based on all the facts and circumstances of each particular case. *Id.* Extreme and outrageous conduct may be the result of an abuse of a position of power. *McNamara v. Foley*, No. 97 C 4944, 1998 WL 409412, at *6 (N.D.Ill. July 15, 1998); *Doe v. Calumet City*, 161 Ill.2d 374, 204 Ill.Dec. 274, 641 N.E.2d 498, 507 (Ill.1994). Thus, police officers who abuse their authority may be liable for extreme abuses of their positions. *See McGrath*, 127 Ill.Dec. 724, 533 N.E.2d at 809–10.

 In this case, Holder has based his IIED claims on the individual police officers (1) confrontation with him, (2) utterance of profane and racial slurs at him, and (3) false charges of battery against him. The individual police officers and the City challenge each of Holder's bases separately. However, the court does not look at each of the acts separately, the court looks to the totality of the circumstances to determine the nature of the conduct. *See Lorenzana v. Mette*, No. 94 C 6861, 1995 WL 461860, at *6 (N.D.Ill. Aug.2, 1995). The court finds that an average member of the community would find that these individual police officers' actions of attacking Holder, yelling racial slurs at him and filing false battery charges against him in response to his attempts to identify himself, were an abuse of power and beyond all bounds of decency.[3] *See id.* (finding the defendant officers' actions of kicking and beating the plaintiff, hurling racial slurs at the plaintiff, and arresting and holding plaintiff in custody for seven hours to be beyond the norms of civilized society

and to be extreme and outrageous conduct). Thus, Holder's allegations constitute extreme and outrageous conduct and, therefore, Holder has sufficiently alleged a cause of action for IIED.

Finally, the individual police officers and the City allege that Holder's claim against the City fails because it is unclear whether Holder's *respondeat superior* claim is based on the actions of all the individual police officers or only two police officers. However, Holder's first amended complaint makes clear that the basis for the City's liability is the actions of Sergeant Patrick Minogue and Officer Ronald Mieziere. The City, as opposed to its argument in Count VII, does not dispute that the City may be held liable for the actions of these two officers. The City claims that the actions of these two officers do not amount to extreme and outrageous conduct. These two officers were involved in the beating of Holder, the uttering of racial slurs and the filing of false battery charges, thus, as previously stated the court finds these acts to be extreme and outrageous.

In sum, Holder has sufficiently alleged (1) the nature of the IIED claim to put the individual police officers on notice and (2) extreme and outrageous conduct. Accordingly, the court denies the individual police officers and the City's joint motion to dismiss Counts IV and V because Holder has sufficiently alleged intentional infliction of emotional distress.

### C. Counts VI and VII[4]—Illinois Hate Crime Act

In Count VI, Holder alleges that the individual police officers violated the Illinois Hate Crime Act when they uttered racial slurs while assaulting and beating

---

**3.** The individual police officers and the City have asked the court to take judicial notice of the fact that Holder was found guilty of resisting or obstructing a police officer. However, the individual police officers and the City have not provided the facts relative to that conviction nor have they provided a docu-

ment which states for what Holder was convicted. Without these contexts, the court will not take judicial notice at this time.

**4.** As previously stated, the plaintiff has incorrectly numbered Count VII as Count VIII.

him. In Count VII, Holder is attempting to hold the City liable for the individual police officers' actions pursuant to the theory of *respondeat superior.*

The individual police officers and the City argue that Counts VI and VII, violation of the Illinois Hate Crime Act, fail to state a claim because (1) Holder has failed to allege the necessary elements of a hate crime and (2) a hate crime is outside the individual police officers' scope of employment. The Illinois Hate Crime Act states: "A person commits [a] hate crime when, by reason of the actual or perceived race, color, ... ancestry ... or national origin of another individual ..., he commits assault [or] battery ... against a victim who is: (1) the other individual." 720 ILL.COMP. STAT. 5/12–7.1.

The individual police officers and the City allege that Holder has failed to properly allege assault and battery as the predicate acts of the hate crime because Holder has failed to aver that the assault was "without lawful authority" and the battery was "without lawful justification." However, the Hate Crime Act "does not explain how a civil plaintiff may satisfy [his] burden of proof that a predicate crime was committed, or whether [the plaintiff] must plead the elements of the underlying crime." *Cotton v. Duncan,* No. 93 C 3875, 1993 WL 473622, at *5 (N.D.Ill. Nov.15, 1993). The individual police officers, in this case have provided no support for their contention that Holder must plead each element of the predicate act. To the contrary, Holder has cited cases which stand for the opposite conclusion. *See Abdoh v. City of Chicago,* 930 F.Supp. 311, 313 (N.D.Ill.1996) (finding that plaintiff's allegation that he was beaten because of his race stated a claim under the Illinois Hate Crime Act, even though plaintiff did not allege any factual support); *Duncan,* 1993 WL 473622, at *5 (declining to dismiss plaintiff's allegation of a violation of the Illinois Hate Crime Act, even though plaintiff did not allege the elements of the predicate act).

In this case, Holder argues that the individual police officers' remark that Holder is "just a Nigger with a badge" evidence that they assaulted and battered him because of his race. Whether the individual police officers actually assaulted and battered Holder will be decided at a different stage of the proceedings. However, because Holder has alleged a racial animus and two of the necessary predicate acts, this court finds that Holder has stated a claim under the Illinois Hate Crime Act against the individual police officers. *See Abdoh,* 930 F.Supp. at 313; *Duncan,* 1993 WL 473622, at *5. Accordingly, the individual police officers and the City's joint motion to dismiss Count VI is denied.

The individual police officers and the City contend that Holder's claim against the City based on the Illinois Hate Crime Act should be dismissed. They allege that a hate crime falls outside the scope of the police officers' employment because "hate" is a personal and unauthorized motivation. Under Illinois law, Holder's claim against the City pursuant to *respondeat superior* is permissible if the individual police officers' conduct was within the scope of their employment. *See Franklin v. Village of Riverdale,* No. 94 C 3983, 1995 WL 616678, at *5 (N.D.Ill. Oct.19, 1995); *Pyne v. Witmer,* 129 Ill.2d 351, 135 Ill.Dec. 557, 543 N.E.2d 1304, 1308 (Ill.1989). Conduct is within the scope of employment if: "(a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; [and] (c) it is actuated, at least in part, by a purpose to serve the master." *Pyne,* 135 Ill.Dec. 557, 543 N.E.2d at 1308. Conduct is not within the scope of employment if the employee's actions were different from those authorized, *id.,* or were performed purely in the employee's self-interest. *Wright v. City of Danville,* 174 Ill.2d 391, 221 Ill.Dec. 203, 675 N.E.2d 110, 118 (Ill.1996).

In this case, because Holder has alleged that the individual police officers were (1)

responding to a shooting incident when they uttered racial slurs and attacked him and (2) were acting "under color of statutes, policies, customs, ordinances and/or usages of the State of Illinois, [t]he City of Chicago, and the Chicago Police Department," (P.'s Resp. ¶ 5), Holder has sufficiently alleged that the individual police officers were acting within the scope of their employment. Thus, Holder has sufficiently alleged that the City is liable pursuant to the theory of *respondeat superior* for the individual police officers' conduct. Accordingly, the individual police officers and the City's joint motion to dismiss Count VII for failure to state a claim is denied.[5]

In sum, Holder has sufficiently alleged that the individual police officers and the City violated the Illinois Hate Crime Act. Accordingly, the court denies the individual police officers and the City's joint motion to dismiss Counts VI and VII.

### D. Counts VIII and IX—Failure to protect

In Count VIII, Holder alleges that De-Rosa and Rodriquez failed to protect him when the other individual police officers attacked him. In Count IX, Holder is attempting to hold the City liable for De-Rosa and Rodriquez's actions pursuant to the theory of *respondeat superior.* The City does not dispute its liability pursuant to this theory. Specifically, as opposed to Count VII, the City does not argue that the two police officers' actions were outside the scope of their employment.

■ The individual police officers and the City argue that Counts VIII and IX,

failure to protect, fail to state a claim. The individual police officers and the City allege that (1) under Illinois law there is no "failure to protect" claim which may be asserted against police officers or their municipal employers and (2) Holder has failed to allege any Illinois law upon which this claim is based. However, a plaintiff in federal court does not need to point to the exact statute which entitles him to relief, so long as "relief is possible under any set of facts that could be established consistent with the allegations." *Bartholet v. Reishauer A.G.,* 953 F.2d 1073, 1078 (7th Cir.1992). Based on Holder's arguments, the court finds that the applicable Illinois law is 745 ILL.COMP.STAT. 10/4–102, Police protection, and 745 ILL.COMP.STAT. 10/2–202, Execution or enforcement of law.

■ Under section 4–102 of the Local Governmental and Governmental Employees Tort Immunity Act ("Tort Immunity Act"), 745 ILL.COMP.STAT. 10/4–102, a municipality and its employees are immune from tort liability "for failure to provide police protection service or adequate police protection service or for failure to prevent the commission of a crime." *Id.* There is no exception to this immunity.[6]

■ In this case, Holder does not dispute the fact that individual police officers and their municipal employers are immune from liability under the Tort Immunity Act for "failure to protect." Holder, however, claims that DeRosa, Rodriquez, and the City are liable because DeRosa and Rodriquez's conduct was willful and wanton and, thus, fits into an exception established by the Tort Immunity Act. However, there is no willful and wanton exception, to section

---

**5.** However, Holder will have to establish at a later stage that the individual police officers alleged commission of a hate crime was authorized by the City.

**6.** Many courts were previously finding that the "special duty doctrine" was an exception to the "public duty rule" and the Tort Immunity Act. Recently, however, the Illinois Supreme Court clarified the applicability of the "special duty doctrine." It ruled that the

"special duty doctrine" operates only as an "exception to the public duty rule in cases in which the legislature has not granted immunity to the municipality." *Harinek v. 161 N. Clark St. Ltd. Partnership,* 181 Ill.2d 335, 230 Ill.Dec. 11, 692 N.E.2d 1177, 1183 (Ill.1998). The legislature has clearly granted immunity in this case, thus, the "special duty doctrine" does not operate as an exception to the Tort Immunity Act.

4–102 of the Tort Immunity Act. Accordingly, Holder does not state a claim under section 4–102 of the Tort Immunity Act because DeRosa, Rodriquez, and the City are immune from liability.

However, under section 2–202 of the Tort Immunity Act, public employees are liable for injuries caused by their "acts or omissions in the execution or enforcement of any law" if their conduct was willful and wanton. 745 Ill.Comp.Stat. 10/2–202. For Holder to rely upon this section, Holder must allege that (1) DeRosa and Rodriquez were executing or enforcing the law and (2) their conduct was willful and wanton. *See id.* Because Holder has alleged that the individual police officers were responding to a shooting incident, Holder has sufficiently alleged that DeRosa and Rodriquez were executing or enforcing the law.

 Holder must also allege willful and wanton conduct. Willful and wanton conduct is defined as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others." 745 Ill.Comp.Stat. 10/1–210. Thus, the conduct does not have to be an intentional act; "it may be an act committed under circumstances exhibiting a reckless disregard for the safety of others." *Carter v. Chicago Police Officers,* 165 F.3d 1071, 1081 (7th Cir.1998) (citing *Medina v. City of Chicago,* 238 Ill.App.3d 385, 179 Ill.Dec. 658, 606 N.E.2d 490, 496 (Ill.App.Ct.1992)). Furthermore, it is something more than "mere inadvertence, incompetence, or unskillfulness." *Id.* (citing *Moran v. City of Chicago,* 286 Ill.App.3d 746, 222 Ill.Dec. 112, 676 N.E.2d 1316, 1323 (Ill.App.Ct. 1997)). "A person engages in willful and wanton conduct when he ignores known or plainly observable dangerous conditions and does something that will naturally and probably result in injury to another." *Id.*

In this case, Holder has alleged that DeRosa and Rodriquez did nothing to prohibit or to stop the other police officers from attacking him. The two police officers were aware of the attack yet, nevertheless, just stood by and watched a clearly "dangerous occurrence." Therefore, the court finds that Holder has sufficiently alleged that (1) DeRosa and Rodriquez were executing or enforcing the law and (2) their conduct was willful and wanton. *See Byrd v. Brishke,* 466 F.2d 6, 11 (7th Cir.1972) ("It is clear that one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge."). Thus, Holder's first amended complaint, states a claim against DeRosa, Rodriquez and the City, through the theory of *respondeat superior,* under section 2–202 of the Tort Immunity Act.[7] Accordingly, the court denies the individual police officers and the City's joint motion to dismiss Counts VIII and IX.

## CONCLUSION

For the foregoing reasons, the court denies defendants the individual police officers and the City of Chicago's joint motion to dismiss Counts IV, V, VI, VII, and VIII of plaintiff Eric Holder's first amended complaint pursuant to Federal Rule Civil Procedure 12(b)(6).

---

7. However, the question of whether these two police officers' actions amount to willful and wanton conduct is a question for the trier of fact. *Carter v. Chicago Police Officers,* 165 F.3d 1071, 1080–81 (7th Cir.1998).