# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 03-2151

SAMUEL S. STIVE,

*Plaintiff-Appellee,*

v.

UNITED STATES OF AMERICA,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 00 C 369—**James B. Zagel**, *Judge.*

ARGUED FEBRUARY 24, 2004—DECIDED APRIL 28, 2004

Before POSNER, RIPPLE, and EVANS, *Circuit Judges.*

POSNER, *Circuit Judge.* Samuel Stive brought suit against the United States under the Federal Tort Claims Act for battery by two police officers employed by the Department of Veterans Affairs at a VA hospital in Illinois. Applying Illinois law, which requires in a suit for battery against law enforcement officers that the plaintiff prove that the officers acted willfully and wantonly, the district judge ruled after a bench trial (the only kind available in a suit under the Act) that Stive had proved his case. The judge awarded him $87,000 in damages and later some $49,000 in attorneys'

fees. It is only from the award of attorneys' fees that the government appeals, complaining primarily about the standard that the judge used. Echoing the substantive standard applicable to the battery claim, the judge had ruled that the government to be liable for payment of the plaintiff's attorneys' fees need only have acted "wantonly" in resisting the suit, which he defined as "causelessly, without restraint, and in reckless disregard of the rights of others."

The Equal Access to Justice Act, so far as applicable to this case, makes the United States liable for attorneys' fees "to the same extent that any other party would be liable under the common law." 28 U.S.C. § 2412(b). The federal common law of attorneys' fee awards is the "American rule," under which each party to a lawsuit bears his own expenses of suit unless "the losing party 'has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Muslin v. Frelinghuysen Livestock Managers, Inc.*, 777 F.2d 1230, 1235 (7th Cir. 1985) (quoting *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.*, 417 U.S. 116, 129 (1974)). The government doesn't like "wantonly" and points to language in other opinions which suggests that deliberate misconduct must be shown. For example, the Supreme Court has said that "the narrow exceptions to the American Rule effectively limit a court's inherent power to impose attorney's fees as a sanction to cases in which a litigant has engaged in bad-faith conduct or willful disobedience of a court's orders." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (1991); see also *id.* at 46 n. 10 ("purpose . . . to harass or to cause unnecessary delay or needless increase in the cost of litigation"); *Maynard v. Nygren*, 332 F.3d 462, 470 (7th Cir. 2003) ("willful disobedience or bad faith"); *Miller Brewing Co. v. Brewery Workers Local Union No. 9, AFL-CIO*, 739 F.2d 1159, 1167 (7th Cir. 1984) ("suit or defense . . . brought in bad faith—brought to harass rather than to win"); *Badillo v. Central Steel & Wire*

*Co.*, 717 F.2d 1160, 1165 (7th Cir. 1983) ("subjective bad faith"); *Pedraza v. United Guaranty Corp.*, 313 F.3d 1323, 1336 (11th Cir. 2002) (ditto).

There is less to this apparent tension in the case law than meets the eye. *Chambers* itself used the identical formula, "wantonly" and all, that our court in *Muslin* had quoted from an earlier Supreme Court opinion. 501 U.S. at 45-46. Indeed, it is the canonical formula for the bad-faith exception to the American rule. E.g., *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 512 (6th Cir. 2002); *Dubois v. U.S. Dept. of Agriculture*, 270 F.3d 77, 80 (1st Cir. 2001); *Primus Automotive Financial Services, Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997); *Smith v. Detroit Federation of Teachers, Local 231*, 829 F.2d 1370, 1375 (6th Cir. 1987); *Sterling Energy, Ltd. v. Friendly National Bank*, 744 F.2d 1433, 1435 (10th Cir. 1984). And when one looks carefully at Judge Zagel's definition of "wantonly," one sees that the key term is "reckless disregard" and one is reminded that recklessness is frequently in the law a near synonym for intentionality, e.g., *In re TCI Ltd.*, 769 F.2d 441, 445 (7th Cir. 1985) ("our court has long treated reckless and intentional conduct as similar"); cf. *Farmer v. Brennan*, 511 U.S. 825, 835-47 (1994). Recklessly making a frivolous claim is treated as bad faith within the meaning of the American rule in *B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1108 (9th Cir. 2002); *Fink v. Gomez*, 239 F.3d 989, 993-94 (9th Cir. 2001), and *Primus Automotive Financial Services, Inc. v. Batarse, supra*, 115 F.3d at 648-49.

Whatever the precise standard for an award of attorneys' fees under the American rule, it is not close to being satisfied in this case. A defendant normally has a right to defend, rather than having to keel over just because a suit has been filed against him. There are utterly frivolous defenses, as we know from tax-protester cases, but the de-

fense in this case was not frivolous. Nor was it improperly motivated. But to see this we must review the facts.

The two officers had noticed the plaintiff and (it turned out) his son in a car parked in an area closed to visitors near a building that had been the site of recent thefts. The police recognized the son as the subject of an arrest warrant that was to be executed when he was discharged from the hospital. One of the officers saw what appeared to be an open wine cooler in the car, which is illegal. The plaintiff was ordered out of the car, patted down, and handcuffed (because of a suspicious, though as it turned out innocent, bulge in his pocket), but then let go, and he was never charged with any offense. But somehow in the encounter his shoulder was seriously injured. He said that one of the officers had pushed his face against the car and then grabbed his arm and twisted his arm and shoulder, but all the officers would admit was that in the process of hand-cuffing him one of them had applied an arm lock to him because he was resisting. Unbeknownst to the officers, the plaintiff, who was 72 years old when the incident occurred, had a damaged rotator cuff in his shoulder, which while asymptomatic was vulnerable to being seriously injured by an application of even slight force. The district judge found, however, and the finding is not challenged, that the officer punched the plaintiff in the shoulder, telling him that it would be sore for several days. There was no excuse for his doing that, and so the battery was indeed "wanton" under Illinois law ("a person engages in willful and wanton conduct when he ignores known or plainly observable dangerous conditions and does something that will natur-ally and probably result in injury to another," *Carter v. Chicago Police Officers*, 165 F.3d 1071, 1080-81 (7th Cir. 1998); *Medina v. City of Chicago*, 606 N.E.2d 490, 496 (Ill. App. 1992)), as distinct from the kind of technical battery that occurs when a person intentionally slaps another but thinks,

though he is unreasonably mistaken, that his victim consented to the slap. *Restatement (Second) of Torts* § 892 comment c and illustration 4 (1979); see also *Larson v. Great West Casualty Co.*, 482 N.W.2d 170, 173-74 (Iowa App. 1992).

But was the government "wanton" in *defending* against the plaintiff's claim of wanton battery? Given the preexisting condition of Stive's shoulder, the severity of his injury was not inconsistent with the officers' version of what had happened. So, had the judge believed the officers, he would have concluded that the battery had not been "wanton"—indeed, that it had not been improper in any sense, but instead had been a reasonable exertion of force in the circumstances. Officers are privileged to use reasonable force to make an arrest, and it is not argued that the officers were unreasonable in wanting to handcuff the plaintiff before checking out the suspicious bulge. The fact that a witness's testimony is rejected does not brand as frivolous the claim or defense of the party who called him. And these officers *were* witnesses, not defendants; the government is the defendant. (The officers had been joined as defendants originally, but were later dropped from the case and the fee award does not run against them.) The lawyers who defended the government didn't know that the officers were lying. It is true that the plaintiff's testimony was corroborated, and the officers' undermined, by the pattern of Stive's bruises, but the bruises might have been the result of a struggle in which the officers' conduct, though rougher than they acknowledged on the stand, had not risen to the level of wanton infliction of injury.

So the decision to defend the suit rather than throw in the towel was not frivolous and the claim for an award of attorneys' fees should therefore not have gotten even to first base. But we reject the government's alternative argument that even if the judge had been justified in awarding at-

torneys' fees, the award would have had to be capped at 25 percent of the damages awarded, which would have reduced the fee award from $49,000 to less than $22,000. The argument relies on 28 U.S.C. § 2678, which provides that no attorney in a suit under the Federal Tort Claims Act shall be paid a fee that exceeds 25 percent of the judgment or settlement for his client. It is unlikely that the statute has anything to do with attorneys' fee shifting, if only because such fee shifting, especially from defendant to plaintiff rather than vice versa, is rare in suits governed by the American rule, as suits under the tort claims act are. Rather, the statute (which has counterparts in other federal laws creating entitlements to sue, see *Gisbrecht v. Barnhart*, 535 U.S. 789, 802-03 and n. 12 (2002)) is for the protection of plaintiffs from being gouged by their lawyers. S. Rep. No. 89-1327, 89th Cong., 2d Sess. 1-2, 6, 7 (1966); *Joe v. United States*, 772 F.2d 1535, 1536-37 (11th Cir. 1985) (per curiam); Irvin M. Gottlieb, "The Federal Tort Claims Act—A Statutory Interpretation," 35 *Geo. L.J.* 1, 60-62 (1946). So, since attorneys' fees when awarded are awarded to the party, not his lawyer, *Venegas v. Mitchell*, 495 U.S. 82, 86-88 (1990); *Evans v. Jeff D.*, 475 U.S. 717, 730-32 (1986); *Shula v. Lawent*, 359 F.3d 489, 492 (7th Cir. 2004); *Central States, Southeast & Southwest Areas Pension Fund v. Central Cartage Co.*, 76 F.3d 114, 116 (7th Cir. 1996)—28 U.S.C. § 2412(b) is explicit that the award of attorneys' fees is to the "prevailing party"—were the statute applicable it would merely regulate the division of the total award, damages plus attorneys' fees, between lawyer and client; it would not limit the government's liability.

A further consideration is that an award of attorneys' fees based on misconduct (however it is defined, exactly), which is the only basis on which fees can be awarded against the government in tort claims suits, is a sanction that bears little relation to the size of the judgment; and we cannot think of

any reason, therefore, why Congress would have required that the sanction be capped at a percentage of the judgment. It can indeed be argued that the sanction, rather than being proportionate to the judgment, should be a diminishing percentage of it, as we suggested recently in *Assessment Technologies of WI, LLC v. WIREdata, Inc.*, 361 F.3d 434, 436-37 (7th Cir. 2004). The larger the judgment, the more the plaintiff has left over after paying his lawyer's contingent fee. If the judgment is likely to be very small, the prospect of having to share it with the lawyer may discourage the client from suing by reducing his expected net benefit of suit to a trivial level, enabling the government to discourage meritorious small suits by adopting a policy of fighting every suit no matter how small the stakes and how weak the government's defense. Fee shifting would have little efficacy in discouraging such improper conduct if the fee were limited to 25 percent of the judgment, however tiny. Compare our discussion in *Mathias v. Accor Economy Lodging, Inc.*, 347 F.3d 672, 676-77 (7th Cir. 2003), of why punitive damages should, if they are to achieve their deterrent purpose, be a higher percentage of compensatory damages when the latter are small than when they are large. And note that when attorneys' fees are shifted under the American rule the rationale for doing so "is, of course, punitive." *Chambers v. NASCO, Inc., supra*, 501 U.S. at 53, (quoting *Hall v. Cole*, 412 U.S. 1, 5 (1973)); see also *Guevara v. Maritime Overseas Corp.*, 59 F.3d 1496, 1502 (5th Cir. 1995); *Brown v. Sullivan*, 916 F.2d 492, 495 (9th Cir. 1990); *United States v. 2,116 Boxes of Boned Beef*, 726 F.2d 1481, 1488 (10th Cir. 1984). This is another reason for doubting that in setting the 25 percent limit Congress had fee shifting in view.

In this case, however, we conclude that the award of any amount of attorneys' fees was unreasonable and must therefore be

REVERSED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*