ESTATE OF Leslie GEORGE, deceased, by Betty GEORGE, Personal Representative, Plaintiff–Appellant,

Betty George, Plaintiff,

v.

State of MICHIGAN; Michigan Department of State Police, State Trooper Greg Cook, State Trooper Phillip Duplessis, Defendants–Appellees.

No. 01–1613.

United States Court of Appeals, Sixth Circuit.

April 23, 2003.

Before BATCHELDER and COLE, Circuit Judges; and GRAHAM,* District Judge.

BATCHELDER, Circuit Judge.

The Estate of Leslie George (the "Estate") brings this action under 42 U.S.C. § 1983 and state negligence law against Michigan State Troopers Greg Cook and Phillip Duplessis, in their individual capacities, for depriving the plaintiff's decedent, Leslie George, of her constitutional rights. Because we find that the conduct of Troopers Cook and Duplessis did not constitute an unreasonable search or seizure in violation of the Fourth Amendment, we affirm the district court's dismissal of the § 1983 claim. Moreover, for the reasons stated by the district court, we affirm its holding with respect to the Estate's state law negligence claim.

## I.

The sad facts of this case arise from what began as an ordinary traffic stop in the Detroit area. Driver Leslie George ("George") and her friend, passenger

---

* The Honorable James L. Graham, United States District Court for the Southern District of Ohio, sitting by designation.

Shampayne Robinson ("Robinson"), were traveling north along the John C. Lodge Freeway on May 25, 1998. It was approximately two o'clock in the morning on a holiday weekend, and defendants Trooper Gregory Cook ("Cook") and Trooper Phillip Duplessis ("Duplessis") were working an "enhanced patrol" in an effort to curb drunk driving. The troopers, who were also driving northbound along the Lodge Freeway, noticed that George's car was traveling significantly in excess of the posted speed limit and changing lanes frequently without signaling. Cook moved his police cruiser behind George's car and activated his emergency lights; George exited the freeway onto a service drive that ran parallel to the freeway, just south of Seven Mile Road. George pulled her car up to the right curb of the service drive, still headed north, and Cook positioned the police cruiser approximately three to six feet behind George's car, and about two feet to the left so as to create a safe passage of ingress and egress from the cruiser to George's vehicle.

Cook and Duplessis spoke with George and Robinson, respectively, who both denied having consumed any alcohol that night. However, Cook noticed that George's eyes were slightly red, glassy and watery. Based upon the appearance of George's eyes, as well as her driving behavior, Cook decided to administer a sobriety test.[1] Cook asked George to exit the car, and he led her to the passenger side of the cruiser, onto a paved area between the road and the sidewalk several feet to the east of and parallel to the road.[2] As Cook was explaining the procedures of the test to George, a speeding car came careening off of the exit ramp and onto the service drive toward the stopped cars. Hearing the approaching car, Cook looked toward the exit ramp and saw the car skidding sideways along the sidewalk toward George and himself. He shouted a warning, tried unsuccessfully to grab George, and ran towards the service drive to escape the oncoming car. Officer Duplessis, who was questioning Robinson by the passenger door of George's car, ran north towards Seven Mile Drive. The out-of-control car—still sliding sideways along the sidewalk on the passenger side of the cruiser and George's car—nicked Duplessis's heel as it skidded by before eventually coming to rest in a nearby parking lot. Ms. George was struck and killed by the car.

Leslie George's estate and her mother, Betty George, initially filed a seven-count complaint against the State of Michigan, the Michigan Department of State Police, and Troopers Cook and Duplessis. The plaintiffs dismissed all of the counts except two against Troopers Cook and Duplessis in their individual capacities: a negligence claim brought under Michigan state law and a § 1983 claim alleging a violation of the Fourteenth Amendment duty of care that is created when the state places an individual in custody. Both claims were based upon the common allegation that the troopers had placed George in danger by conducting the sobriety test on the service road, and that their conduct was the proximate cause of George's death.

The troopers moved for summary judgment, and the district court granted their motion, holding that the troopers did not

---

1. The toxicology report compiled from tests administered several hours later showed no trace of drugs or alcohol in George's body.

2. There is some dispute between the parties regarding the exact location of the sobriety test. The Estate alleges that the test took place in the service drive behind the police cruiser. The officers testified that the test was conducted off the road along the passenger side of the police cruiser.

exhibit "deliberate indifference" to George's well-being or place her in a state-created danger and then fail to protect her in violation of her Fourteenth Amendment due process rights. Consequently, the court held, the troopers were entitled to qualified immunity with respect to the Estate's § 1983 claim. Moreover, the court said, even if Cook and Duplessis had placed George in danger and failed to protect her, their actions did not violate clearly established law such that they could lose their qualified immunity. The court went on to hold that the Estate's state law claim is barred by public employee immunity under Michigan law.[3]

The Estate timely appealed.

## II.

We review de novo a district court's grant of summary judgment, using the same Rule 56(c) standard used by the district court. *Miami Univ. Wrestling Club v. Miami Univ.*, 302 F.3d 608, 613 (2002). A party moving for summary judgment may set forth facts in the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" to support its motion, Fed.R.Civ.P. 56(c), and we draw any inferences that can be made from the facts in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). If the moving party produces facts upon which judgment could be granted, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e); that is, it must present "evidence on which the jury could reasonably find" in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ We begin by examining the Estate's claim, brought under § 1983,[4] that Cook and Duplessis violated George's right to substantive due process under the Fourteenth Amendment of the United States Constitution by detaining George against her will, conducting an unnecessary sobriety test in a dangerous location, and then failing to protect her after they had placed her in danger. In *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), the Supreme Court reviewed a § 1983 action brought by the parents of a deceased motorcycle rider against law enforcement officers who had pursued the decedent in a high-speed chase. Though the Court analyzed the facts in that case under the Fourteenth Amendment and asked whether the officers who had participated in the high-speed chase had exhibited "conscience-shocking" behavior in violation of the decedent's substantive due process rights, the Court noted that

[b]ecause we have always been reluctant to expand the concept of substantive due process, we held in *Graham v. Connor* that [w]here a particular amendment provides an explicit textual source of

---

**3.** The Estate filed a motion for reconsideration or rehearing on February 18, 2001, having obtained an affidavit from Shampayne Robinson, who had moved to South Carolina without alerting the plaintiffs. The district court took the new evidence into consideration and, once again, denied the Estate's request for legal redress, stating that even if the statements in the affidavit were taken as completely true, "the conduct of the Defendants at issue in this case ... still falls short of the conduct of the police officers in *Davis*

which the Court found to constitute 'deliberate indifference.' "

**4.** 42 U.S.C. § 1983 allows an individual to recover against any person who, acting under color of law, "subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws...."

constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims. *Lewis,* 523 U.S. at 842 (internal quotations and citations omitted) (citing *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)); *see also id.* at 843 (" '[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.' " (quoting *United States v. Lanier,* 520 U.S. 259, 272 n. 7, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997))). We must determine, then, whether the Estate's claims should be considered under the Fourteenth Amendment or, because all of the Estate's claims arise out of a traffic stop, the search and seizure rubric of the Fourth Amendment. Though the Estate did not raise its claims under the Fourth Amendment, "[t]he form of the complaint is not significant if it alleges facts upon which relief can be granted, even if it fails to categorize correctly the legal theory giving rise to the claim," *Dussouy v. Gulf Coast Inv. Corp.,* 660 F.2d 594, 604 (5th Cir.1981), and we will therefore consider the Estate's claims under the Fourth Amendment if appropriate.

Because we must determine in this case whether the actions of two troopers conducting an ordinary traffic stop infringed upon the legal rights of Leslie George, we find that the facts are properly analyzed under the Fourth Amendment, not the Fourteenth. The actions of Troopers Cook and Duplessis in pulling George over and administering a sobriety test to her were "unquestionably a seizure within the meaning of the Fourth Amendment." *Pennsylvania v. Bruder,* 488 U.S. 9, 10, 109 S.Ct. 205, 102 L.Ed.2d 172 (1988) (per curiam); *see also United States v. Hensley,* 469 U.S. 221, 226, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985) (noting that "stopping a car and detaining its occupants constitute[s] a seizure within the meaning of the Fourth Amendment"). We have found nothing in the record or pleadings to indicate that the actions of these officers in stopping George and administering the sobriety test should be characterized as anything other than a routine traffic stop, and therefore as anything other than a "seizure" for purposes of Fourth Amendment analysis. The fortuity of the speeding and out-of-control vehicle does not alter that characterization.

In *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the Supreme Court addressed a situation in which the police had, during the course of their investigatory stop, detained, injured, and ignored the pleas of a diabetic who was not drunk or involved in criminal activity as the police had believed, but rather was badly in need of sugar. *Id.* at 388–89. The Court noted that

> [t]hough the complaint allege[s] violations of both the Fourth Amendment and the Due Process Clause, we analyze[ ] the constitutionality of the challenged application of force solely by reference to the Fourth Amendment's prohibition against unreasonable seizures of the person, holding that the "reasonableness" of a particular seizure depends not only on *when* it is made, but also on *how* it is carried out.

*Id.* at 395 (citations omitted). In fact, *"all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due pro-

cess' approach." *Id.; see also Lewis,* 523 U.S. at 844–45 (citing with approval a Sixth Circuit decision holding "that *Graham* 'preserve[s] fourteenth amendment substantive due process analysis for those instances in which a free citizen is denied his or her constitutional right to life through means *other than* a law enforcement official's arrest, investigatory stop or other seizure'" (quoting *Pleasant v. Zamieski,* 895 F.2d 272, 276 n. 2 (6th Cir.) (emphasis added), *cert. denied,* 498 U.S. 851, 111 S.Ct. 144, 112 L.Ed.2d 110 (1990))).

While the Estate does not allege that the troopers used "excessive force," but instead asserts that they exhibited "deliberate indifference" to George's well-being, that distinction is immaterial to our analysis. When, as is the case here, the conduct of the which the plaintiff complains is committed by an officer in the usual course of "a law enforcement official's arrest, investigatory stop or other seizure," *Pleasant,* 895 F.2d at 276 n. 2, we analyze it under the strictures of the Fourth Amendment.

We evaluate a possible violation of the Fourth Amendment "by undertaking 'an objective assessment of an officer's actions in light of the facts and circumstances then known to him. The language of the Amendment itself proscribes only "unreasonable" searches and seizures.'" *United States v. Ferguson,* 8 F.3d 385, 388 (1993) (en banc) (quoting *Scott v. United States,*

436 U.S. 128, 137, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978)). Our inquiry requires us to balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham,* 490 U.S. at 396, 109 S.Ct. 1865 (citations and quotations omitted). Though the reasonableness test "is not capable of precise definition or mechanical application," we must give "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue...." *Id.*

▮ In this case, Troopers Cook and Duplessis pulled George over and decided, after speaking with her, to conduct a sobriety test. Trooper Cook had a reasonable suspicion that George had been drinking, and decided to conduct a relatively short, non-intrusive examination of George rather than take the risk of putting a potential drunk driver back on the road.

The Estate argues that the troopers then rendered George vulnerable to danger by conducting the sobriety test "in the middle of the service drive...." We find this argument unpersuasive as a matter of law. Whether Cook conducted the sobriety test near the rear or adjacent to the passenger side of the police cruiser, as the officers testified, or behind the police cruiser, as the affidavit of Shampayne Robinson claimed,[5] Cook did not conduct

---

**5.** Even accepting Robinson's statement at face value, Robinson did not say that she saw the test being conducted "in the middle of the service drive." Rather, the affidavit says that Robinson looked in the side view mirror and saw George and the officer standing "directly behind the trooper's car." The plaintiffs do not dispute the officers' testimony that their police cruiser was behind and two to three feet to the left of George's car. It is improbable that Robinson could have seen George and the officer through the side view mirror had they been standing behind the cruiser; it

is highly unlikely that Robinson would have been able to see the middle of the service drive through the side view mirror at all. Finally, it is undisputed that Officer Cook, on hearing the approaching car, ran *toward* the service road to escape being struck; that the careening car did not hit the police cruiser but skidded sideways along the sidewalk on the passenger side of the cruiser and George's car, coming to rest across the sidewalk north of George's car; and that George's body was somewhat north of the car that had hit her. In light of all of the undisputed evidence,

the test in an unreasonable manner. The test was conducted at night, the police cruiser's emergency lights were operating, and any motorists in the area could reasonably have been expected to see the police cruiser's emergency lights, alerting them to take caution as they drove by the area. The troopers could not have reasonably foreseen that a speeding driver would exit the interstate, lose control of his car, and careen sideways down the sidewalk along the passenger side of the stopped police cruiser and George's car. The person or persons at fault in this case are easily identified, and Troopers Cook and Duplessis are not among them. The troopers' actions were reasonable, and they did not violate the Fourth Amendment. Without the finding of such a violation, the Estate's § 1983 claim cannot go forward.

### III.

■ With regard to the Estate's claim of negligence brought under Michigan law, we find no error in the reasoning employed and the conclusions reached by the district court.

### IV.

For the reasons set forth above, we AFFIRM the district court's judgment.

COLE, concurring.

Although I agree with the result reached by the majority today, I write separately to emphasize that the rubric of substantive due process, and not that of the Fourth Amendment, applies in this case. The majority concludes that the Fourth Amendment is applicable simply because this case arises out of a traffic stop. However, the Estate does not chal-

lenge the reasonableness of the traffic stop itself or the officer's decision to conduct a field sobriety test. There is certainly no claim here that the officers used excessive force. Instead, the central question in this case is whether, while George was in their custody, either Cook or Duplessis arbitrarily placed her at an increased risk of harm. As the district court concluded and the parties argue on appeal, the proper focus in this case is, therefore, on whether Cook or Duplessis created a risk of harm to George by engaging in conduct so egregious that it can be said to be arbitrary in a constitutional sense. *See Ewolski v. City of Brunswick*, 287 F.3d 492, 510 (6th Cir. 2002). The district court properly applied the "shocks the conscience" test and concluded that the Estate failed, as a matter of law, to demonstrate that Cook and Duplessis acted with deliberate indifference to an excessive risk to George's safety.

The majority makes no mention of this Court's previous decisions in *Davis v. Brady*, 143 F.3d 1021, 1024 (6th Cir.1998) and *Stemler v. City of Florence*, 126 F.3d 856, 867 (6th Cir.1997), *cert. denied*, 523 U.S. 1118, 118 S.Ct. 1796, 140 L.Ed.2d 936 (1998), which, like this case, arose out of traffic stops that resulted in custodial situations. In those cases, this Court used the substantive due process framework to analyze whether the defendant officers owed and breached a duty not to place the plaintiffs in those cases at risk of harm from a third party. *Davis*, 143 F.3d at 1024; *Stemler*, 126 F.3d at 867. Because these cases presented issues that are sufficiently analogous to the issue presented here, I believe that we are bound to adhere to this precedent and analyze the Estate's claims under substantive due process. Because, ultimately, the Estate has failed to demonstrate that the defendants' conduct shocks

---

Robinson's affidavit is not sufficient to support the plaintiffs' contention that the sobriety

test was conducted in the middle of the service drive.

the conscience insofar as it has failed to present evidence of deliberate indifference, I respectfully concur in the result reached by the majority.