Anna **PLEASANT**, Personal Representative of the Estate of Jeffrey Pleasant, Deceased, Plaintiff–Appellant,

v.

Michael **ZAMIESKI** and City of Detroit, Defendants–Appellees.

No. 88–1378.

United States Court of Appeals, Sixth Circuit.

Argued May 26, 1989.

Decided Feb. 8, 1990.

Rehearing and Rehearing En Banc Denied March 28, 1990.

---

Frank G. Becker (argued), Southfield, Mich., Mark Granzotto, Detroit, Mich., for plaintiff-appellant.

Marion Jenkins (argued), Stuart Trager, Law Dept. for the City of Detroit, Detroit, Mich., for defendant-appellee.

Before MERRITT, Chief Judge, MARTIN, Circuit Judge, and LIVELY, Senior Circuit Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

This case arose from the accidental shooting death of Jeffrey Pleasant by Michael Zamieski, a Detroit police officer. This appeal follows a directed verdict for the City of Detroit and a jury verdict in favor of Zamieski. For the reasons stated below, we affirm.

The shooting occurred on the night of August 11, 1985, shortly after Pleasant unsuccessfully attempted to steal an automobile located in the parking lot of the Taystee Bakery in Detroit. Michael Zamieski, an off-duty Detroit police officer, was called to the scene by a bakery employee who observed Pleasant's actions. Zamieski approached the car in which Pleasant was seated. He identified himself as a police officer and showed Pleasant his badge and gun. Zamieski told Pleasant to get out of the car. Initially, Pleasant refused. Pleasant then left the car and began to climb over a fence located near it. As Zamieski grabbed Pleasant from behind, Zamieski's gun accidentally discharged, firing a fatal shot into Pleasant's back.

Anna Pleasant, Jeffrey Pleasant's mother and the personal representative of his estate, originally filed this action in Wayne County Circuit Court on July 1, 1986. In her complaint, Pleasant alleged that Zamieski and the City of Detroit violated certain provisions of the Michigan Constitution. She further alleged that Zamieski and the City injured Jeffrey Pleasant through their negligent acts and by assault and battery.

Anna Pleasant also complained that Officer Zamieski and the City of Detroit violated Jeffrey Pleasant's rights guaranteed under the federal Constitution. These claims were brought under 42 U.S.C. § 1983. Specifically, Pleasant alleged that Zamieski's conduct deprived Jeffrey Pleasant "of

constitutionally protected rights, privileges and immunities including the right to be free from the unreasonable seizures of his person through the use of grossly excessive and unnecessary force as protected by the Fourth Amendment ... and to be free from summary punishment and the use of force protected by the Fifth and Fourteenth Amendments of the United States Constitution." Similarly, she complained that the City of Detroit failed to instruct its police officers, including Officer Zamieski, "with regard to constitutional protections afforded to persons ... to be free from deadly force pursuant to the Fourth, Fifth and Eighth Amendments to the United States Constitution." She alleged that this failure resulted in the deprivation of Jeffrey Pleasant's right "to be free of unreasonable searches and seizures...."

The case was removed to United States District Court for the Eastern District of Michigan in August 1986. A jury trial was held in November 1987. At the conclusion of Pleasant's case, the court granted the defendant's motion for directed verdict on all claims as it applied to the City of Detroit. The motion was denied as applied individually to Zamieski. On November 19, 1987, the jury returned a verdict in favor of Zamieski on all claims. Pleasant filed a timely appeal shortly after her motions for judgment not withstanding the verdict and for a new trial were denied.

I. *Claim Under Section 1983 Against the City of Detroit*

■ Anna Pleasant here asserts that the district court erred in granting a directed verdict in favor of the City of Detroit on the section 1983 claim. She argues that Detroit's stated general policy regarding the use of deadly force by its police officers violates the constitutional requirements articulated in *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), and that it proximately caused the death of Jeffrey Pleasant. In *Garner* the Supreme Court held unconstitutional Tennessee's statute governing the use of force during arrest insofar as it authorized the use of deadly force against unarmed, nondanger-ous suspects. 471 U.S. at 11, 105 S.Ct. at 1701.

Before Anna Pleasant can succeed in her claim against Detroit, she concedes that Detroit, as a municipality, can be held liable only for constitutional violations that occur as a result of its policy or custom. *Monell v. Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Zamieski testified that he acted pursuant to the City of Detroit's policy regarding the use of force during arrest when he attempted to arrest Jeffrey Pleasant. Pleasant argues that this testimony shows that a directed verdict in favor of Detroit was improper.

We disagree. Pleasant reads one sentence of Detroit's policy regarding the use of force wholly out of context. Pleasant would have us believe that Detroit authorizes the use of deadly force against suspected felons who are merely obstinate in resisting arrest. In fact, Detroit's policy states, in part, that "[n]o amount of force is too great in making an arrest if it is necessary to overcome obstinate *and dangerous* resistance." (emphasis added). This same policy elsewhere provides that deadly force "is not to be used in misdemeanor cases. It may be used in felony cases where absolutely necessary and set forth in department rules, regulations, order and procedures."

When reviewing a motion for directed verdict, we must consider the evidence in the light most favorable to the non-moving party. *Rockwell International Corp. v. Regional Emergency Medical Services*, 688 F.2d 29, 31 (6th Cir.1982). Taken as a whole, Detroit's policy, unlike the policy in *Garner*, does not authorize police officers to shoot unarmed, fleeing suspects. As such, Detroit has no policy condoning violations of the Constitution. *Monell*, 436 U.S. 658, 98 S.Ct. at 2019. A directed verdict in favor of Detroit was proper.

II. *Claim Under Section 1983 Against Officer Zamieski*

■ Pleasant also argues that the district court erred in failing to grant her judgment notwithstanding the verdict for her section 1983 claim against Zamieski.

At the very least she suggests that a new trial should be ordered because the verdict below was against the great weight of the evidence. She argues that the facts establish all the requirements for a fourth amendment excessive force claim under *Garner*. We review the factual determinations of the jury under a standard of clearly erroneous. *See, e.g., Connaughton v. Harte Hanks Communications, Inc.,* 842 F.2d 825 (6th Cir.1977).

██ In *Garner* the Supreme Court held that "[t]he use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable." 471 U.S. at 11, 105 S.Ct. at 1701. That is, "[a] police officer may not seize an unarmed, nondangerous suspect by shooting him dead." *Id.* Because Jeffrey Pleasant did not attempt to commit a violent crime, and because he never presented a physical threat to Zamieski or anyone else, Anna Pleasant asserts that Zamieski's use of deadly force constituted an unconstitutional fourth amendment seizure under *Garner*.

Zamieski argues that *Garner* does not apply to the present case. The facts in *Garner* involved the intentional use of deadly force to prevent the escape of an unarmed fleeing felon. *Garner,* 471 U.S. at 3–4, 105 S.Ct. at 1697–98. The present case involves the allegedly negligent use of a handgun in the course of apprehending a suspected felon. Anna Pleasant concedes that the shooting death of Jeffrey Pleasant was accidental, the product of negligence, not the deliberate use of deadly force. Zamieski argues, however, that negligence is not enough to sustain a section 1983 action. In *Daniels v. Williams,* 474 U.S. 327, 330, 106 S.Ct. 662, 664, 88 L.Ed.2d 662 (1986), the Court held that " 'deprive' in the Due Process Clause connote[s] more than a negligent act...." The Court in *Daniels* over-

ruled its holding in *Paratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) "to the extent that it states that mere lack of due care by a state official may 'deprive' an individual of life, liberty or property under the Fourteenth Amendment." *Daniels,* 474 U.S. at 330–31, 106 S.Ct. at 664–65. Zamieski also argues that "intent" was an implicit element of the Court's holding in *Garner.*[1]

Fortunately, the Supreme Court has recently clarified its holding in *Garner* so that the application of its principles is nonproblematic in this case. In *Graham v. Connor,* — U.S. —, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the Court held that excessive force claims brought against law enforcement officials are to be analyzed under the "objective reasonableness" standard of the fourth amendment. *Graham* involved an investigative stop of Dethorne Graham, a diabetic who had quickly entered and exited a convenience store in Charlotte, North Carolina. *Id.* 109 S.Ct. at 1867–68. Graham had originally entered the store to purchase some orange juice to counteract an insulin reaction, but was dissuaded by the line of people ahead of him at the checkout counter. *Id.* at 1868. Connor, a Charlotte police officer, made an investigative stop of the vehicle in which Graham was travelling after observing Graham's suspicious movements. Back up assistance arrived shortly thereafter. According to Graham, the police refused to listen as he explained of his diabetic need for sugar. Sometime during the course of the stop, Graham sustained several injuries including a broken foot, several cuts and a bruised forehead. *Id.* Graham was released when the police were informed that he had done nothing wrong. The district court granted a directed verdict in favor of the Charlotte police officers involved. The

---

**1.** Zamieski and the City of Detroit fail to note that the court in *Daniels* specifically declined to answer the question "whether something less than intentional conduct, such as recklessness or 'gross negligence' is enough to trigger the protection of the Due Process Clause." 474 U.S. at 334 n. 3, 106 S.Ct. at 666 n. 3. In *Nishiyama v. Dickson,* 814 F.2d 277 (6th Cir.1987) we considered this question and held that a claim of

gross negligence may be sufficient to sustain a section 1983 claim. 814 F.2d at 282. *See also Jones v. Sherrill,* 827 F.2d 1102, 1106 (6th Cir. 1987). The Supreme Court has since rejected this approach to excessive force "seizure" cases. *See* discussion of *Graham v. Connor,* — U.S. —, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), *infra.*

Fourth Circuit affirmed applying a substantive due process analysis of Graham's excessive force claim.

The Supreme Court reversed. The Court rejected the substantive due process analysis of excessive force claims utilized by the court of appeals and first announced by the Second Circuit in *Johnson v. Glick*, 481 F.2d 1028 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). The Court remarked that in *Tennessee v. Garner*, it had "analyzed the constitutionality of the challenged application of force solely by reference to the Fourth Amendment's prohibition against unreasonable seizures of the person, holding that the 'reasonableness' of a particular seizure depends not only on *when* it is made, but also on *how* it is carried out." *Graham*, 109 S.Ct. at 1871 (citations omitted, emphasis in original). In *Graham* the court made "explicit what was implicit in *Garner's* analysis," namely "that *all* claims that law enforcement officials have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Id.*[2] The Court cautioned that the "proper application" of this reasonableness standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 1871–72. With these facts and circumstances in mind "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than the

20/20 vision of hindsight." *Id.* at 1872. The Court emphasized that this is an objective standard "without regard to [the actual officer's] underlying intent or motivation." *Id.*

*Graham* requires us to determine whether Officer Zamieski's actions in the course of his attempt to arrest Jeffrey Pleasant were objectively reasonable under the circumstances. First, we must determine whether or not Zamieski's decision to draw his gun at the scene was reasonable. Second, we must determine whether Zamieski's decision not to return his gun to its holster before trying to prevent Jeffrey Pleasant's escape was reasonable.

The jury found that Zamieski's actions in this case were objectively reasonable under the circumstances. First, we cannot say that his decision to draw his gun initially was unreasonable under the circumstances. Both sides now agree that Pleasant did not pose a threat either to Zamieski or to anyone else. We cannot, however, use the wisdom of hindsight to judge Zamieski's actions. *See Graham*, 109 S.Ct. at 1872. We must be careful not to "deny the practical difficulties of attempting to assess the suspect's dangerousness." *Garner*, 471 U.S. at 20, 105 S.Ct. at 1705. The incident occurred at night. When Zamieski arrived at the scene a felony was taking place. Jeffrey Pleasant, the suspected felon, was in a car which he did not own. Not knowing what, if anything, Pleasant had with him in the car, it was reasonable at that time for Zamieski to draw his gun. Second, we cannot say that Zamieski's failure to re-holster his gun was unreasonable under the circumstances. By the time Pleasant left the car and attempted to flee, Zamieski should have been aware that Pleasant did not pose a threat. However,

**2.** Despite the broad phrasing, presumably this imperative would preserve fourteenth amendment substantive due process analysis for those instances in which a free citizen is denied his or her constitutional right to life through means other than a law enforcement official's arrest, investigatory stop or other seizure. *See, e.g., Nishiyama*, 814 F.2d at 270 (convicted felon murdered plaintiffs' decedent while in police custody, and while having authorized but unsupervised use of a marked police patrol car).

Moreover, because the fourth amendment's objective reasonableness standard is to be applied to "*all* claims that law enforcement officials have used excessive force—deadly or not," *Graham*, 109 S.Ct. at 1871, the question as to whether force is deadly or not is now irrelevant. *Cf. Robinette v. Barnes*, 854 F.2d 909 (6th Cir. 1988) (analysis as to whether deadly force was involved in the use of a police dog to find burglary suspect in dark building, which accidentally resulted in suspect's death).

it appears that Zamieski had little time to react. Had he taken the time to put his gun away, Pleasant would have escaped.[3] While the consequences of his actions were, by accident, tragic, they were not objectively unreasonable.

Pleasant makes much of the dicta in *Brower v. County of Inyo*, — U.S. —, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989). In *Brower* the Supreme Court reversed the dismissal of a section 1983 excessive force case. The plaintiffs alleged that the police roadblock with which plaintiffs' decedent collided constituted an unreasonable seizure under the fourth amendment. The court held that a fourth amendment seizure

> does not occur whenever there is a governmentally caused termination of an individual's freedom of movement ... nor even whenever there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement ... but only when there is a governmental termination of freedom of movement *through means intentionally applied.*

*Id.* 109 at 1381 (emphasis in original). Because the police roadblock was intentionally applied and did terminate decedent's freedom of movement, the plaintiffs alleged a fourth amendment "seizure." This was sufficient to sustain their section 1983 action. *Id.* at 1383.

The Court noted, however, that "[i]n determining whether the means that terminates the freedom of movement is the very means that the government intended we cannot draw too fine a line, or we will be driven to saying that one is not seized who has been stopped by the accidental discharge of a gun with which he was meant only to be bludgeoned...." *Id.* at 1382. The Court stated that it is "enough for a seizure that a person be stopped by the very instrumentality set in motion or put in place in order to achieve that result." *Id.*

Pleasant argues that the Court's language in *Brower* requires us to find in her

favor. While the similarity between the Court's example in *Brower* and the facts of the present case is striking, the legal effect of this similarity is nil.[4] The Court uses the example of bludgeoning a person with a gun and accidentally shooting them merely to show the often mistaken approach of distinguishing the means of terminating an individual's freedom from the means the government actually intended. The Court's point is that the gun in either case would have been the "instrumentality set in motion" which would have brought about a fourth amendment seizure. The Court did not say that the accidental discharge of a gun used as a bludgeon was an unreasonable seizure *per se.* Indeed, if, as *Graham* says, excessive force cases are to be analyzed under the fourth amendment's reasonableness standard with "careful attention to the facts and circumstances of each particular case," *Graham*, 109 S.Ct. at 1872, there can be no *a priori* judgments of categorical unreasonableness. The inquiry as to whether or not some action constitutes a "seizure" under the fourth amendment is distinct from the inquiry as to whether an action already found to constitute a fourth amendment seizure is also "unreasonable" under the fourth amendment. " 'Seizure' alone is not enough for § 1983 liability; the seizure must be 'unreasonable.' " *Brower*, 109 S.Ct. at 1382. We have found that Zamieski's actions were reasonable under the facts and circumstances of the present case.

### III. *Claim Under Michigan Law*

■ Pleasant also argues that the district court erred in granting a directed verdict in favor of Detroit on the claim that Detroit violated Jeffrey Pleasant's rights under the Michigan Constitution. Pleasant asserts that in *Smith v. Dept. of Public Health*, 428 Mich. 540, 410 N.W.2d 749 (1987), the Michigan Supreme Court created a cause of action for violations of the

---

3. Zamieski testified "And as we were struggling, I haven't got time to put the gun away. He's holding and I'm swinging and he's swinging and he's kicking, and during this few seconds that we progressed from the car to the fence is when the incident occurred."

4. It appears from the record, however, that Officer Zamieski did not bludgeon or attempt to bludgeon Jeffrey Pleasant with his gun.

Michigan Constitution. She asserts that such a cause of action is similar to that articulated by the Supreme Court under the United States Constitution in *Bivens v. Six Unknown Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

The district court correctly found, however, that the controlling opinion in *Smith* limited causes of action under the Michigan Constitution to "appropriate cases." The Michigan Supreme Court defined such cases as those "in which the state's liability would, but for the Eleventh Amendment, render it liable under the 42 USC 1983 (sic) standard for local governments articulated in *Monell v. New York City Dept. of Social Services*." *Smith*, 428 Mich. at 542, 410 N.W.2d 749 (citations omitted). In *Monell*, the Supreme Court held that liability may exist only where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the body's officers." 436 U.S. at 690, 98 S.Ct. at 2035. The court also held that one may sue for a constitutional deprivation under section 1983 "pursuant to governmental 'custom' even though such a custom has not received formal approval by the body's official decision making channels." *Id.* at 691, 98 S.Ct. at 2036. The district court correctly found that Pleasant failed to prove the type of constitutional deprivation described in *Monell* and so properly granted a directed verdict in favor of Detroit.

■ Pleasant also argues that the district court failed to properly instruct the jury on Michigan law regarding the negligent use of firearms. She asserts, moreover, that given this law, Zamieski should have been found liable for the death of Jeffrey Pleasant as a matter of law. She argues that she is entitled to judgment notwithstanding the verdict or, at the very least, a new trial given the great weight of evidence in her favor.

The district court correctly found that the cases relied upon by Pleasant do not apply in this case. *Clark v. Braham*, 386 Mich. 53, 191 N.W.2d 352 (1971), and *Felgner v. Anderson*, 375 Mich. 23, 133 N.W.2d 136 (1965), each involved the use of firearms in the context of hunting. *Riste v.*

*Helton*, 139 Mich.App. 404, 362 N.W.2d 300 (1984), involved an accidental shooting where a man separated from his wife tried to visit his children. The district court reasoned that the higher standard of care in the use of firearms articulated in these cases should not apply to a police officer acting in the course of his or her employment. The court found support for this position in *Jenkins v. Starkey*, 95 Mich. App. 685, 291 N.W.2d 170 (1980). In *Jenkins* the Michigan Court of Appeals held that the standard of negligence on the part of a police officer is whether the officer acted as a reasonably prudent person under like circumstances would have acted. "This standard allows the fact-finders to determine that some factual circumstances reasonably require greater or lesser diligence than do other circumstances in order to constitute reasonable or due care." 95 Mich.App. at 692, 291 N.W.2d 170 (citing *Felgner v. Andersen*, 375 Mich. 23, 30, 133 N.W.2d 136 (1965)). The district court also found that it would be inappropriate to shift the burden to Zamieski to prove that he was completely without fault once Pleasant proved that Jeffrey Pleasant's injury resulted from the discharge of Zamieski's firearm. While Pleasant argues that this is contrary to *Felgner, Clark and Bahel v. Manning*, 112 Mich. 24, 29–30, 70 N.W. 327 (1897). *Jenkins*, however, supports the district court's approach and it is with this approach that we agree.

The judgment of the district court is affirmed in its entirety.

MERRITT, Chief Judge, concurring.

I agree with the result reached by the Court, and I also agree with the Court's reasoning in Sections I and III of its opinion. But I see no need for the discussion on reasonableness in Section II because there was a jury issue here, and the District Court put the case to the jury. Since no complaint is made about the instructions, the jury verdict should stand.

This is a case that should have gone to the jury on the use of excessive force under the Fourth Amendment. We need not suggest how we ourselves would decide the "reasonableness" issue under the Fourth Amendment. The jury has decided that

issue, and we need not analyze it further than to agree that it was a jury issue.

Accordingly, I see no need for the discussion in Section II of the Court's opinion, and I decline to go along with it because I am not sure I agree with everything in it. I have difficulty, for example, with the view that everything the officer did with his weapon was "objectively reasonable" under the Fourth Amendment. I tend to believe the officer's conduct was negligent, perhaps reckless; but I agree with District Judge Duggan that the question should have been left to the jury. Moreover, it may be that the constitutional tort at issue here is an "intentional" tort requiring an intent to bring about the result. If so, negligence is not sufficient. *See Brower v. County of Inyo,* — U.S. —, 109 S.Ct. 1378, 1381–82, 103 L.Ed.2d 628 (1989), in which the Court says that the constitutional tort under the Fourth Amendment requires "termination of freedom of movement *through means intentionally applied,*" but then explains that "we cannot draw too fine a line" between intent and negligence. In my judgment, our Court need not decide that question in the present case since no issue is made of the jury instructions on intent.