NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0061n.06
Filed: January 23, 2006

No. 04-5723

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | |
|---|---|
| TINA TALLMAN, Personal Representative of the Estate of Harold G. Lee, Jr.; TINA CLARK, as Next Friend and Guardian of Savanna Nicole Lee, a Minor, and Chelsey Dawn Clark, a Minor, <br><br> Plaintiffs-Appellants, <br><br> ELIZABETHTOWN POLICE DEPARTMENT; WILLIAM BLAND, <br><br> Defendants-Appellees. | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY |

Before: CLAY and GIBBONS, Circuit Judges; and STAFFORD, District Judge.[*]

**JULIA SMITH GIBBONS, Circuit Judge.** The estate of Harold Lee, Jr., who was accidentally shot and killed following a high-speed police chase, brought a civil rights action against the Elizabethtown Police Department and Officer William Bland in his official and personal capacities. The district court granted summary judgment in favor of the defendants-appellees, and

_____

[*] The Honorable William Stafford, United States District Judge for the Northern District of Florida, sitting by designation.

1

the estate appealed. For the following reasons, we affirm the grant of summary judgment in favor of the defendants-appellees.

I.

On July 3, 2001, Lee asked Randall Babb to drive him from Owensboro, Kentucky to Elizabethtown, Kentucky. Lee was initially driving Babb's vehicle, but Lee became agitated after getting lost and Babb took over the driving. At some point after the men entered the Elizabethtown city limits, Officer William Bland of the Elizabethtown Police Department attempted to stop Babb's vehicle for a traffic violation. The vehicle drove away at a high rate of speed as Bland was approaching Babb's vehicle on foot.[1] A high-speed chase[2] of the vehicle lasted for eight minutes until the tires of the vehicle struck "stingers" which had been placed in its path by the Kentucky state police.[3] Once the vehicle was stopped, Babb exited the vehicle and began to run away from the scene.

Bland stopped his vehicle parallel to Babb's vehicle. Lee remained in the passenger's seat of Babb's vehicle after Babb exited the vehicle and fled from the scene on foot. Bland rapidly exited his patrol car and approached the passenger side of Babb's vehicle with his gun drawn and pointed at Lee. Bland did not know whether or not Lee was armed because Lee's arms and hands were not

---

[1] Babb testified that Lee panicked when he saw the police lights because he had placed "some Sudafed tab or . . . some dope in the trunk," and that Lee, from the passenger's seat, changed the gear shift from park to the drive position and hit the gas pedal himself telling Babb to "get out of here." A significant number of pseudoephedrine tablets (3,456) and twenty-seven lithium batteries were discovered during an inventory of the vehicle.

[2] Babb testified that he drove his vehicle up to 100 miles per hour during the chase.

[3] The initial stop and the chase were captured on video by the video camera in Bland's patrol car.

visible to Bland. Bland gave Lee a verbal command,[4] but Lee did not respond to the command nor did he take any actions indicating that he intended to surrender to the police. Lee was sitting motionless in Babb's car. Bland reached through the passenger side window with one arm while still holding his gun pointed at Lee with the other arm.[5] As he was reaching through the window, Bland's gun discharged, killing Lee and severing part of Bland's hand.[6] The incident occurred in a matter of a few seconds.

Basing jurisdiction on 42 U.S.C. § 1983, Lee's estate and Tina Clark, the mother of Lee's two minor children, filed suit on June 26, 2002, against Bland in his official and personal capacities and the Elizabethtown Police Department asserting that the shooting violated Lee's federal constitutional rights and Kentucky constitutional rights. The complaint was amended twice to assert causes of action based on various state laws, none of which are at issue in this appeal.

The appellees filed a motion for summary judgment on January 12, 2004. The district court issued a memorandum opinion granting the appellees' motion for summary judgment on May 24, 2004. A timely notice of appeal was filed on June 15, 2004.

II.

A district court's grant of summary judgment is reviewed *de novo*. *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 361 (6th Cir. 2001). The court must "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the non-moving party." *Id.* Summary

---

[4] Bland claims the command was "get your hands up" or something similar.

[5] Appellees state that "Bland attempted to reach through the passenger side window to detain Lee."

[6] A video camera in Officer Rob Green's patrol car captured Bland's exit from his vehicle and his approach to Babb's vehicle. The videotape from Green's car does not show Lee, the window of the Babb vehicle, or Bland's exact action in reaching into the window.

3

judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). For a dispute to be genuine, the evidence must be such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For the fact to be material, it must relate to a disputed matter that "might affect the outcome of the suit." *Id*. Whether qualified immunity applies is a question of law reviewed *de novo*. *Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 346 (6th Cir. 2001).

Qualified immunity protects government officials from civil liability for actions taken within their official discretion insofar as these actions do not violate clearly established statutory or constitutional rights of which a reasonable official would have been aware. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It is not merely a defense to liability; rather, when applicable, qualified immunity protects government officials from lawsuits and, hence, the burdens of litigation. *See Saucier v. Katz*, 533 U.S. 194, 200-01 (2001). To assert qualified immunity, an official must first demonstrate that she acted within her discretionary authority. *See Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000). Once the official makes this showing, the burden shifts to the plaintiff to prove that the officer violated a right so clearly established that any reasonable official in her position would have understood it was unlawful to engage in the conduct that violated the right. *Id*. In the present case, there is no dispute that Bland was acting within his authority as a state official, so the burden shifts to the appellants to overcome the qualified immunity defense.

The court's initial inquiry is whether the facts, "taken in the light most favorable to the party asserting the injury," establish that the officer's conduct violated a constitutional right. *Saucier*, 533

4

U.S. at 201. If so, the court then considers whether the right that was violated was clearly established in "light of the specific context of the case, not as a broad general proposition." *Id*. The operative question "is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. at 202. "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Id*.

In order to determine whether Bland is entitled to qualified immunity, we must first determine whether Lee's Fourth Amendment rights were violated. Because the Fourth Amendment protects citizens from unreasonable seizures, excessive force claims are analyzed using the Fourth Amendment "reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). "In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Id*. at 394. In the instant case there is no dispute that Lee was seized within the meaning of the Fourth Amendment.[7] The remaining issue is whether or not Bland's actions were reasonable under the circumstances. "Determining the reasonableness of the force used under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Dickerson v. McClellan*, 101 F.3d 1151, 1162 (6th Cir. 1996) (quoting *Graham*, 490 U.S. at 396) (internal quotation marks and citation omitted). Factors to consider when addressing the reasonableness of a law enforcement officer's actions include: (1) the severity of the crime involved, (2) the

---

[7] The appellants devote several pages of their brief to the issue of whether a seizure occurred. However, the appellees concede that a seizure occurred. Therefore, this step of the analysis requires no further discussion.

5

immediacy of the threat to officers and others, and (3) whether the suspect is resisting arrest or attempting to flee. *Graham*, 490 U.S. at 396.

"Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* Furthermore, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* The risks faced by law enforcement professionals must be considered when assessing reasonableness. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id.* at 396-97. "[T]he Fourth Amendment does not require officers to use the best technique available as long as their method is reasonable under the circumstances." *Dickerson*, 101 F.3d at 1160.

> [W]e must avoid substituting our personal notions of proper police procedure for the instantaneous decision of the officer at the scene. We must never allow the theoretical, sanitized world of our imagination to replace the dangerous and complex world that policemen face every day. What constitutes "reasonable" action may seem quite different to someone facing a possible assailant than to someone analyzing the question at leisure.

*Id.* at 1163 (quoting *Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992)).

The appellants argue that a reasonable jury could conclude that Bland's actions were intentional and, therefore, unreasonable. The appellants speculate that a jury "could conclude that Officer Bland was so agitated and angry over the police chase that he intended to hurt Lee." This assertion is based on appellants' view that the record establishes that "Bland rushed to stick his gun in Lee's face without reasonable time for Lee's compliance and submission to police orders (only

6

two second[s] between car stop and weapon discharge)" and "Bland, with loaded weapon pointed at Lee's head, attempted to pull Lee through the window despite the fact that Lee did nothing to resist arrest or flee." As stated by the district court:

> There is no dispute that the discharge of Bland's gun was accidental. Even though [Appellants] attempt to argue that a reasonable jury could conclude otherwise, [Appellants] have presented no evidence to suggest that. Bland testified in his deposition that he did not intend to shoot Lee. And [Appellants'] expert, James Marsh, likewise concluded in his report that Bland unintentionally discharged his gun.

The appellants are required to "go beyond the pleadings and by [their] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(e)). Appellants have not met that burden with regard to Bland's intention at the time the weapon discharged. There is no evidence from which a jury could conclude that Bland intentionally discharged his weapon. We therefore focus the reasonableness inquiry on Bland's actions leading up to the unintentional discharge of the weapon. *See Leber v. Smith*, 773 F.2d 101, 105 (6th Cir. 1985) ("It is undisputed that Smith unintentionally discharged his weapon as he slipped and fell; the question is whether he acted reasonably in drawing his gun.").

This court has applied a tiered approach in evaluating excessive force cases pursuant to 42 U.S.C. § 1983. In *Dickerson*, the court stated that "[f]ollowing our precedent and the analysis in *Carter* [*v. Buscher*, 973 F.2d 1328 (7th Cir. 1992)], we analyze the § 1983 claims separately in this case. . . . [T]he violation of the knock and announce rule is conceptually distinct from the excessive force claim." 101 F.3d at 1162. More relevant to the instant case is *Pleasant v. Zamieski*, 895 F.2d 272, 276 (6th Cir. 1990), in which the court held:

> *Graham* requires us to determine whether Officer Zamieski's actions in the course of his attempt to arrest Jeffrey Pleasant were objectively reasonable under the

circumstances. First, we must determine whether or not Zamieski's decision to draw his gun at the scene was reasonable. Second, we must determine whether Zamieski's decision not to return his gun to its holster before trying to prevent Jeffrey Pleasant's escape was reasonable.

Similar to *Pleasant*, we must determine whether Bland's decision to initiate the chase of Babb's vehicle was reasonable and whether Bland reaching into the passenger's side of Babb's vehicle with his weapon drawn and pointed at Lee was reasonable.

With regard to Bland's initiation of the high-speed pursuit after Babb drove away at high speed, this court has held that engaging in a high-speed pursuit in the course of a traffic stop is objectively reasonable as a matter of law.

> [T]he use of high-speed pursuits by police officers is not an unreasonable method of seizing traffic violators. . . . By engaging in high-speed pursuits, without more, police use absolutely no force. . . . By activating his blue lights and siren, an officer directs a traffic violator to pull to the side of the road where the traffic violator can expect to be detained for a few minutes and released. When the traffic violator decides to flout that order and flee from the officer, and the officer responds by following the violator, the intrusiveness occasioned by the officer's conduct is slight.

*Galas v. McKee*, 801 F.2d 200, 203 (6th Cir. 1986). The rationale for allowing police officers to engage in high-speed chases of suspected traffic law violators is obvious: "to strip police officers of the authority to pursue traffic violators would not only severely hamper the effective enforcement of the traffic laws, it would also encourage offenders sought to be stopped for traffic offenses, but guilty of more serious crimes, to flee." *Id*. at 204.

The appellants cite no authority contrary to *Galas*, but rely solely on the testimony of their expert, James Marsh, to argue that a jury could conclude that Bland's action in initiating the chase was unreasonable. Specifically, appellants argue that "Bland and the Elizabethtown Police Department should not have initiated a chase of the vehicle Lee was an occupant in given the information known and the risks such a chase posed to Lee, the officers and other citizens."

8

Actually, Marsh's conclusion regarding the chase, contained in his preliminary written opinion, was that the chase was "[i]nitially appropriate and only for a reasonable amount of time." Marsh, however, also stated that Bland should have abandoned the high-speed chase because of the potential danger to the public and officers. Marsh opined that

> [a]s Bland prolonged this high speed chase there was a chronological cause and effect relationship which resulted in Lee being fatally wounded. The alternative to continuing the high-speed chase for a non forcible felony was to get the vehicle license plate number, identify the suspect, get a warrant and arrest him at a subsequent time.

Marsh's opinion is contrary to *Galas* and does not negate the reasonableness of Bland's actions as a matter of law.[8]

The appellees rely on *Pleasant* and *Leber* to argue that Bland's act of reaching into Babb's vehicle to extricate Lee with a weapon drawn and aimed at Lee's head was reasonable as a matter of law. In *Pleasant*, a police officer accidentally shot the plaintiff as the plaintiff was attempting to climb over a fence. 895 F.2d at 273. A jury returned a verdict in favor of the police officer. *Id.* at 274. This court, upholding the jury verdict, held that the officer's action of drawing his gun was objectively reasonable under the circumstances because the incident occurred at night, the officer arrived while a crime was in progress, and the officer had no idea what type of weapon, if any, the plaintiff had in his possession. *Id.* at 276. The officer's failure to return the gun to its holster was likewise found to be reasonable because there was not enough time to reholster the gun once the plaintiff attempted to flee the scene. *Id.* at 276-77. Although the procedural posture facing the court

---

[8] We note that, despite Marsh's opinion, any causal relationship between the high-speed pursuit and Lee's death is extremely attenuated.

9

in *Pleasant* was review of a jury verdict rather than a grant of summary judgment, the opinion reads

as though the court is determining that the officer's conduct was reasonable as a matter of law.

In *Leber*, police officers were searching for the plaintiff based on a report from the plaintiff's

brother that the plaintiff was missing and was possibly suicidal. 773 F.2d at 102. The police sighted

the plaintiff and a high-speed chase ensued, ending when the plaintiff was stopped by a roadblock.

*Id.* An officer, with his gun drawn, ordered the plaintiff to exit the car. *Id.* The plaintiff did not

respond. *Id.* An additional officer arrived, exited his car and ran to the front of his car with his

weapon drawn. *Id.* As the second officer was moving from the door to the front of the car, he

slipped on a patch of ice, accidentally discharging his weapon as he fell. *Id.* The plaintiff was

struck by the bullet which resulted in his being permanently paralyzed below his rib cage. *Id.* This

court found that the officer acted reasonably in drawing his weapon while approaching the plaintiff's

vehicle and affirmed the district court's grant of summary judgment, relying in part on the fact that

it was night, that the officer had pursued the plaintiff in a high-speed chase, and that the officers had

received a report that the plaintiff was emotionally unstable and possibly suicidal. *Id.* at 105.

The district court found that Bland faced circumstances similar to those faced by the officers

in *Pleasant* and *Leber*. Specifically, the district court stated that

> [l]ike both the *Pleasant* and *Leber* cases, the incident took place late at night. And, as in *Leber*, Bland and another police officer had been following Babb's car for several minutes in a high-speed chase . . . As in *Pleasant*, when Bland approached Lee, he could not see Lee's hands and therefore could not verify whether Lee was armed. And like the suspects in *Pleasant* and *Leber*, Lee was not responding to any verbal commands to get out of the car.

The appellants argue that *Pleasant* and *Leber* are distinguishable from the instant case and that the

district court misapplied the cases. Appellants point out that the plaintiff in *Pleasant* was shot as

he was attempting to flee, forcing the officer to give chase. Lee, in contrast, did not show any signs

10

of resistance as he sat in Babb's car. With respect to *Leber*, the appellants argue that "the officer was perhaps justified in drawing his weapon" but "there is no indication that the officer even intended to point it at the plaintiff, let alone at close range while attempting to pull him through a window." The appellants further argue that the instant case is distinguishable from *Leber* because "even if it was reasonable for Bland to have a weapon pulled in getting out of his squad car, there is considerable issue as to whether it was reasonable to purposely stick his fully armed [weapon] (i.e. no safety) in Lee's face while attempting to pull Lee through a car window."

The only arguably contrary authority cited by the appellants is *Johnson v. City of Milwaukee*, 41 F. Supp. 2d 917 (E.D. Wis. 1999). In *Johnson*, an officer's firearm accidentally discharged as the officer was pushing the plaintiff against a fence, even though the plaintiff had surrendered to the officer. *Id*. at 924. The court denied summary judgment in part finding that it was not unreasonable for the officer to draw his weapon, but that the subsequent use of the weapon created a genuine issue of material fact. *Id*. at 925-26. While *Johnson* is not controlling authority for this court, appellants are correct that there are many similarities between *Johnson* and the instant case. One important difference, however, is that the plaintiff in *Johnson* had clearly surrendered to the officer while Lee had neither surrendered nor indicated that he was unarmed.

Though not perfectly analogous to *Pleasant* and *Leber*, the present case is sufficiently similar that we may appropriately derive guidance from those cases. Moreover, considering the record here, there are no genuine issues of fact concerning the reasonableness of the high-speed chase, the reasonableness of Bland's decision to draw his weapon, or the accidental nature of the shooting.[9]

---

[9] We do not address the appellants' argument that Bland violated police procedure when he left his covered position to approach Babb's vehicle. The Elizabethtown Police Chief, Rueben Gardner, testified that Bland's failure to maintain cover put him at risk and that Bland received counseling

11

Ultimately, upon consideration of the three *Graham* factors – the severity of the crime, whether the suspect posed an immediate threat to the safety of the officer or others, and whether the suspect was resisting arrest or attempting to flee – we hold that Bland's actions were reasonable under the Fourth Amendment. Babb and Lee were fleeing or evading the police, a Class D felony in Kentucky, because they wantonly disobeyed a direction from a police officer to stop their vehicle and created "substantial risk of [] serious physical injury or death to a[] person or property" by leading police officers on a high-speed chase. Ky. Rev. Stat. Ann. § 520.095. Because the crime involved fleeing from law enforcement, the severity of the crime was great. At the time Bland approached Lee, it was unclear whether or not Lee posed an immediate threat to Bland's safety because Bland could not see Lee's hands and, therefore, could not determine whether or not Lee was armed. Finally, while Lee was not resisting arrest or attempting to flee, neither was he complying with Bland's verbal orders. In sum, the *Graham* factors raise no genuine questions about the reasonableness of Bland's actions. At the moment of the incident, it was not unreasonable for Bland to perceive that Lee posed a serious threat to his safety. Therefore, Lee's constitutional rights were not violated and Bland is entitled to qualified immunity.

The dissent views Bland's actions differently and posits that Bland should have advanced more slowly or retreated to a more distant position or waited for a response from Lee. As discussed above, the short answer to the dissent's point is that the Supreme Court has specifically rejected this

---

for failing to maintain a covered position. As appellees point out, however, "[w]hether or not Officer Bland violated a police policy is irrelevant for purposes of the claim pursuant to 42 U.S.C. 1983" because the policy is in place to protect police officers and the issue is whether there was a violation of constitutional rights, not of police policy or procedure. "Under § 1983, the issue is whether [the officer] violated the Constitution, not whether he should be disciplined by the local police force." *Smith*, 954 F.2d at 347.

"wisdom of hindsight" approach that second-guesses an officer's on-the-scene decisions. *See Graham*, 490 U.S. at 396.

Furthermore, even if Bland's actions had violated Lee's Fourth Amendment rights, the right in question was not clearly established so as to preclude the application of qualified immunity. The cases cited by the parties demonstrate that "this area is one in which the result depends very much on the facts of each case. . . . The cases by no means 'clearly establish' that [Bland's] conduct violated the Fourth Amendment." *Brosseau v. Haugen*, 125 S. Ct. 596, 600 (2004). Because "the law did not put [Bland] on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Saucier*, 533 U.S. at 202.

### III.

For the foregoing reasons, we AFFIRM the judgment of the district court.

13

**CLAY, Circuit Judge**, dissenting. The key issue in this case is not whether it was reasonable for Officer Bland to chase Babb and Lee at high speeds; nor whether it was reasonable for him to have his gun drawn as he exited his car once the chase was over. The key issue in the case – the one that warrants a trial and the one the majority entirely ignores – is whether it was reasonable for Bland to charge full-speed at Lee with his gun drawn, giving Lee no meaningful chance to submit to his authority, and to continue at full-speed upon arriving at the passenger window, plunging into the passenger compartment, gun still in hand. After reading the majority opinion, one would not imagine that this is in fact what occurred. The only reason I am able to recount the event as it actually happened is because I have seen the videotape that recorded it for posterity – a videotape no jury will see. The majority has treated this case so cavalierly that justice has escaped. I therefore dissent.

I.

The majority's discussion of the facts reads like Defendants' brief. I shall state here what the videotape shows. It was only 2.5 seconds from the moment Bland exited his car to the moment the gun fired. The videotape shows Bland cross the approximately 10-foot distance between his car and the passenger side of Babb's car at a fast pace with the gun aimed directly at the passenger compartment in which Lee was sitting. Bland was advancing towards Lee for the duration of the encounter; he did not stop even briefly and attempt to instruct Lee to exit Babb's car from a covered, or at least more distant, position. Instead, Bland immediately exited his car, drew his gun, warned Lee to come out with his hands up, and without waiting even a moment for a response, charged ahead. Bland could not see Lee's hands, so he did not know whether Lee was armed.

14

Bland did not slow down once he got to Lee's position; with his gun still pointed directly at Lee, he plunged through the open passenger window. The gun fired, killing Lee instantly and severing a portion of Bland's hand. At his deposition, Bland testified that he did not know why he elected to reach through the window in an effort to remove Lee, nor why he approached Lee so rapidly. In response to a question from Plaintiff's counsel, Bland suggested it would have been "very possible" to remove Lee from the car by way of the open passenger window. Bland also could not say why he kept his gun pointed at Lee as he plunged into the open passenger window.

The record includes testimony from Bland's superior, Elizabethtown police chief Rueben Gardner, and an expert retained by Plaintiff. Both witnesses testified that various of the decisions Bland made after the chase ended – in particular, the decision to charge at Lee immediately rather than taking cover and giving Lee a meaningful chance to surrender – were unreasonable under the circumstances. Chief Gardner testified that Bland's handling of the situation resulted in a departmental reprimand.

II.

I have no quarrel with the majority's recitation of the familiar qualified immunity principles that apply in this case. The upshot of those principles is that we must permit the case to go to a jury if, first, there are genuine issues of material fact as to whether Defendants violated Lee's Fourth Amendment rights in an objectively unreasonable way and, second, those rights were clearly established at the time of Bland's shooting of Lee such that a reasonable officer would have known that his conduct violated them. *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 900-901 (6th Cir. 2004); *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003); *Burchett*, 310 F.3d at 942-43;

15

*Risbridger v. Connelly*, 275 F.3d 565, 569 (6th Cir. 2002) (citing *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (*en banc*)).

I agree with the majority that we must evaluate officer Bland's conduct in light of "the facts and circumstances of [the] case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)). However, these factors offer guidance and are not exhaustive; the ultimate question at all events is whether the totality of the circumstances that faced the officer at the time of his now-challenged actions "justifie[d] [the] particular sort of seizure [he selected]." *Id*. It should not be surprising, then, that the excessive force inquiry is highly fact-sensitive, with each case being resolved in light of its unique factual context. *See id*.

As I undertake to explain below, in applying these standards to this case, I do not see how there are no genuine issues of material fact.

III.

In *Dickerson v. McClellan*, 101 F.3d 1151 (6th Cir. 1996), this Court formally adopted a segmented approach to analyzing excessive force claims. Under this approach, we must scrutinize each of the claimed instances of excessive force individually to determine whether any of them cross the constitutional line. *Id*. at 1161-62; *see also Claybrook v. Birchwell*, 274 F.3d 1098, 1103-1104 (6th Cir. 2001); *Boyd v. Baeppler*, 215 F.3d 594, 599 (6th Cir. 2000). Even before *Dickerson*, we had applied the segmented approach in cases where an officer's gun accidentally discharged. *See Pleasant v. Zamieski*, 895 F.2d 272 (6th Cir. 1990); *Leber v. Smith*, 773 F.2d 101 (6th Cir. 1985). In such cases, the proper approach is to analyze the actions that preceded the firing of the gun to

16

assess whether they were objectively reasonable. Here, Plaintiff contends it was objectively unreasonable for Bland to draw his gun in the first instance; to approach Babb's car immediately instead of keeping his distance for at least a moment; to give Lee only about 2.5 seconds to comply with his demand for cooperation before reaching in through the car window; and to try to secure Lee by reaching through the passenger window while also keeping his finger on the trigger of the gun.

Certainly, Bland's decision to draw his gun under the circumstances was reasonable. *See Illinois v. Wardlow*, 528 U.S. 119 (2000); *Scott v. Clay County*, 205 F.3d 867, 877 (6th Cir. 2000); *Smith v. Freland*, 954 F.2d 343, 346-47 (6th Cir. 1992); *Leber v. Smith*, 773 F.2d 101, 104-105 (6th Cir. 1985). But as I said above, the reasonableness of Bland's merely drawing his gun is not the key issue in this case. The point of the segmented approach to analyzing excessive force claims is that the reasonableness of an officer's initial decision says nothing about the reasonableness of his subsequent ones; each must be assessed individually. *See Dickerson*, 101 F.3d at 1161-62. From the deposition testimony and the videotape, a reasonable jury could conclude that each of the decisions Bland made after stopping his car and drawing his gun were objectively unreasonable; indeed, they were reckless.

In particular, Bland approached Lee so rapidly that a reasonable jury could conclude the warning he gave to Lee was doomed to be ineffectual. Indeed, the tape shows that the warning Bland gave to Lee was practically useless because Lee had no time to comply with it. Recall that Bland began to charge Lee's position the moment after he instructed Lee to come out with his hands up. Recall also that from the stopping of the car to the gun firing, the encounter lasted a total of 2.5 seconds. Police chief Rueben Gardner testified that he disciplined Officer Bland (by filing a written reprimand) for electing to immediately approach Babb's car. Gardner explained that, per department

17

policy, Bland should have remained behind the door of his car for protection and issued his directives to Lee from that position. Gardner admitted that Bland should have given Lee time to comply with the instruction that he exit the car with his hands raised. The department's policy instructs an officer in hot pursuit to take cover behind a car door, point his gun at the suspect and communicate directions to the suspect by the police car's public address system. Plaintiff's expert, James Marsh, echoed these opinions.

For his part, Bland admitted he did not know why he handled the situation in the manner he did. He testified that he did not know why he neglected to follow the department's hot pursuit policy. He further could not explain why he approached Babb's car so rapidly, giving Lee what was effectively no time to submit to his show of force. Finally, having approached the car, Bland could not explain why he immediately and rapidly reached through the passenger window instead of opening the door. Bland admitted that attempting to extricate Lee through the window was very dangerous and contrary to what he had been trained to do under the circumstances. He had no answer for why he pursued this admittedly very dangerous course of action. Finally, Bland admitted that his adrenaline was racing and said he was "almost certain" this was why he pulled the trigger.

Viewing this evidence in the light most favorable to Plaintiff, a reasonable jury could find that Bland's conduct was objectively unreasonable, indeed reckless, under the circumstances.[1] A fitting way to begin the analysis of why this is the case is to review the *Graham v. Connor* factors,

---

[1] The majority would be correct to eschew reliance on the testimony of Gardner and Marsh if there were a clear on-point case to the effect that Bland's conduct under the circumstances of this case was reasonable as a matter of law. (This unremarkable proposition is all the case cited by the majority, *Leber v. Smith*, 954 F.2d at 347, stands for. *See* Maj. Op. n.9.) There being no such case (the majority certainly did not find one), the majority's summary rejection of the probative value of this testimony on the highly fact-bound question of whether Bland acted reasonably in *this* case is mystifying.

i.e., "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (citing *Garner*, 471 U.S. at 8-9). Here, all Bland knew was that Babb, with Lee as his passenger, had been willing to drive at very high speeds in order to evade capture. The circumstances did not permit Bland to reasonably suspect that Lee had committed a specific crime, only that he might have been complicit in the car chase and that he might have been armed. But although it was reasonable to conclude that Lee *may* have been armed, this is not to say it was reasonable to assume, without attempting to confirm the assumption, that Lee posed an immediate threat to the safety of Bland and the other officers, a threat so immediate that charging Lee with a gun drawn, and offering him no meaningful chance to surrender, was reasonable. There is no evidence in the record tending to show that Bland thought he saw a weapon in Lee's lap, or saw Lee reach for something as he approached. In any event, even in situations where the officer-defendant makes such a claim, summary judgment is inappropriate because the question whether the officer's belief that the suspect was armed was objectively reasonable under the circumstances must be submitted to the jury. *E.g., Dickerson*, 101 F.3d at 1162-63. (This is a corollary of the general rule that the district court may not credit the defendant-officer's representation of the facts on the issue of reasonableness where they are disputed by the plaintiff. *Adams v. Metiva*, 31 F.2d 375, 385 (6th Cir. 1994).) The case against summary judgment is even stronger here since Bland has never argued that he saw a weapon in Lee's possession.

Furthermore, the circumstances do not suggest that Lee was "actively resisting arrest or attempting to evade arrest by flight" at the moment Bland exited his police cruiser. Defendants contend that Lee was not cooperative, but this begs the question whether he had a chance to

cooperate in the first place. The extremely brief time between Bland's verbal warning and when he reached Lee's position – only 2.5 seconds – suggests that Lee did not have a meaningful chance. The rapid and aggressive manner in which Bland approached Lee might have been reasonable if Lee was attempting to flee (either by driving or running away), *see Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992); *Leber v. Smith*, 773 F.2d 101 (6th Cir. 1985), or reaching for a weapon (or what could reasonably be thought to be a weapon), *see Boyd v. Baeppler*, 215 F.3d 594, 600 (6th Cir. 2000). Circumstances of this kind would of course be material to the *Graham* excessive force inquiry laid out above. *See Graham*, 490 U.S. at 396-97. But, as discussed, these were not the circumstances here.

Lee sat prone as Bland charged toward him with a gun aimed directly at him. A reasonable jury could conclude that Bland gave Lee no meaningful opportunity to submit to Bland's authority. Indeed, a reasonable jury could conclude that by charging Lee with his gun drawn and immediately reaching into the passenger compartment, still with the gun trained at Lee's head, Bland acted in an objectively unreasonable way. Furthermore, a reasonable jury could conclude that Bland's actions presented an unreasonable risk to human life (his and Lee's). It must be remembered that both Bland's superior, Chief Gardner and Plaintiff's expert, Mr. Marsh, agreed that Bland should have waited longer and issued directions to Lee from a distance and under cover of a car door. And, as discussed, Bland's failure to take these required measures resulted in a departmental reprimand. Furthermore, the record contains Mr. Marsh's uncontradicted conclusion that Bland's having quickly reached his left arm into the passenger compartment of Babb's car while at the same time training his gun at Lee's head, with his finger on the trigger, was unreasonable because it caused "interlimb interaction" and the likelihood of a corresponding "involuntary muscle contraction" in

20

Bland's right arm. This muscle contraction, posited Marsh, was the likely cause of the trigger being pulled. On the totality of this factual record, it is astonishing that the majority can hold as a matter of law that Bland's actions were objectively reasonable.

The cases cited by Defendants, and embraced by the majority, in no way change my view. In *Leber v. Smith*, the plaintiff's brother had called the defendant-officers because he was afraid the plaintiff might commit suicide. 773 F.2d at 102. When the officers arrived at the plaintiff's home, he had departed by car. The brother again voiced concern about the plaintiff, and the officers undertook to locate him. When the plaintiff saw the officers' police car, he sped away and a high speed chase ensued. *Id*. The plaintiff stopped his car at a roadblock and one officer exited his car, with his gun drawn, and ordered the plaintiff to exit; the plaintiff did not respond. *Id*. at 102. Another officer, also with his gun drawn, exited his car and began to approach the plaintiff's car but slipped on a patch of ice, thus causing his gun to accidentally fire. The bullet hit the plaintiff, who became paralyzed as a result. *Id*.

The plaintiff's sole argument in *Leber* was that it was objectively unreasonable for the officer merely to have drawn his gun, *see id*. at 105. The Court summarily rejected this suggestion, noting that the officer was at that moment facing a potentially suicidal person who had just led the police on a high speed chase. *Id*. Because of its brief treatment of the excessive force claim, *Leber* leaves very little guidance to future panels of this Court,[2] but, in any event, it resolved only the limited question of whether it was reasonable for the officer to draw his gun in the first instance. As discussed, however, Plaintiff in this case does not rest her excessive force claim exclusively on

---

[2] Indeed, the last time *Leber* was cited by a panel of this court was in 1992. *See Purnell v. City of Akron*, 1992 WL 296714 (6th Cir. 1992) (unpublished).

Bland's decision to draw his gun. Instead, Plaintiff additionally argues that Bland's subsequent decision to charge Lee with his gun drawn was unreasonable under the circumstances. Furthermore, it appears that in *Leber* the officers instructed the plaintiff to exit his vehicle from a distance and gave the plaintiff time to comply. *See id*. at 102-103.

The second case, *Pleasant v. Zamieksi*, is likewise distinguishable, principally because it did not arise in the summary judgment posture, as this case does, but rather on appeal from a jury verdict in favor of the defendants. In *Pleasant*, the officer approached Pleasant's car and identified himself as a police officer by showing his badge and gun. 895 F.2d at 273. Pleasant ignored the officer's initial request to exit the car but then complied and exited. *Id*. However, he then attempted to climb a nearby fence and escape. As the officer grabbed Pleasant from behind to prevent him from evading capture, the gun accidentally discharged, killing Pleasant. *Id*. A jury found it was reasonable for the officer to draw his gun and also reasonable for him not to re-holster his gun before trying to stop Pleasant from escaping. *Id*. at 276-77.

This Court declined to overturn the verdict, concluding: "[I]t appears that Zamieski had little time to react. Had he taken the time to put his gun away, Pleasant would have escaped. While the consequences of his actions were, by accident, tragic, they were not objectively unreasonable." *Id*. at 277. In contrast to the facts of *Pleasant*, Lee was not attempting an escape when Bland charged at him, thus Bland had time to gauge the situation further but neglected to do so. Furthermore, *Pleasant* offers little guidance as to whether the issue of reasonableness is triable in this case because it came to the Court as an appeal of a jury verdict which required it to review the verdict only for clear error. *See id*. at 274-75 For these reasons, the district court erred in relying on

*Pleasant* and *Leber* in granting summary judgment to Defendants. It is regrettable that the majority today makes the same mistake.

I am firmly of the view that a reasonable jury could conclude Officer Bland's decisions to charge Lee with his gun drawn, without giving Lee a meaningful opportunity to comply with his instructions, and reach into the passenger compartment while still aiming the gun at Lee's head, were objectively unreasonable, indeed reckless.

IV.

Furthermore, on this record a reasonable jury could conclude that Bland's conduct went beyond mere negligence, i.e., beyond objective unreasonableness, such that application of the qualified immunity doctrine would be improper. *Cf. Saucier v. Katz*, 533 U.S. 194, 201-202 (2001). Qualified immunity would only be appropriate if Bland's right to be free from a police officer's reckless use of force was not clearly established at the time he was shot, such that a reasonable officer would not have known that the conduct was unlawful. *McKinley v. City of Mansfield*, 404 F.3d 418, 439 (6th Cir. 2005); *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 900-901 (6th Cir. 2004); *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003); *Burchett*, 310 F.3d at 942-43; *Risbridger v. Connelly*, 275 F.3d 565, 569 (6th Cir. 2002) (citing *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (*en banc*)).

The Supreme Court has repeatedly emphasized that the purpose of the second prong of the qualified immunity inquiry is to ensure that the defendant had sufficient notice of the unlawfulness of his conduct. *Brosseau v. Haugen*, 543 U.S. —, 125 S. Ct. 596, 599-600 (2004) (per curiam); *Hope v. Pelzer*, 536 U.S. 730, 739 (2002); *Saucier*, 533 U.S. at 206. Nevertheless, as this Court recently said, "[t]he Supreme Court has refused to require that a plaintiff demonstrate the existence

23

of a 'fundamentally similar' or 'materially similar' case." *Champion*, 380 F.3d at 902 (quoting *Hope*, 536 U.S. at 741). The determinative question is whether the prior cases relied upon by the plaintiff "gave reasonable warning that the conduct then at issue violated constitutional rights." *Hope*, 536 U.S. at 740. As this Court has held: "[A]n action's unlawfulness can be apparent from direct holdings, from specific examples described as prohibited, or from the general reasoning that a court employs." *Feathers*, 319 F.3d at 848. Consequently, a novel factual context is not a bar to recovery in an excessive force suit. *Hope*, 536 U.S. at 740; *Champion*, 380 F.3d at 902. Finally, while judicial decisions may supply notice of an action's unlawfulness, *see Higgason v. Stephens*, 288 F.3d 868, 876 (6th Cir. 2002), so too may an officer's training and the regulations governing his official conduct. *Hope*, 536 U.S. at 743-45; *Champion*, 380 F.3d at 902.

Because a reasonable jury could conclude that Bland's shooting Lee resulted from decisions that were so far outside the bounds of reasonable police decision-making, qualified immunity should not apply at this stage. Bland's rapid gun-wielding approach of Lee was clearly in contravention of the police department's policies, not to mention generally accepted law enforcement practices. In addition, a reasonable officer would have been well aware of the clearly established principle that seizures must be effectuated in a manner that is reasonable under the circumstances, with the minimum amount of force necessary to accomplish the seizure. *See Graham*, 490 U.S. at 397-98; *Burchett*, 310 F.3d at 946; *United States v. Sanders*, 719 F.2d 882, 887 (6th Cir. 1983). Thus, Bland was on notice that his actions were "clearly proscribed." *Champion*, 380 F.3d at 902 (citing *Hope*, 536 U.S. at 744-45). Indeed, Bland admitted that he did not know why he made the decision to charge rather than wait and give instructions from a more distant and covered position. He neglected to give Lee a meaningful opportunity to submit to his authority, and instead elected to charge Lee's

24

position immediately with, let us not forget, a gun pointed directly at Lee. Bland has offered no law enforcement rationale to explain his conduct. Under these circumstances, a reasonable jury could infer that Bland acted recklessly and in clear disregard for Lee's Fourth Amendment right to be free from excessive force. *See Kostrzewa v. City of Troy*, 247 F.3d 633, 640-41 (6th Cir. 2001); *Billington v. Smith*, 292 F.3d 1177, 1189-90 (9th Cir. 2002); *Alexander v. City & County of San Fransisco*, 29 F.3d 1355, 1368 (9th Cir. 1994) (all holding that an officer's reckless conduct in connection with the use of excessive force will preclude application of the qualified immunity doctrine). In sum, viewing the facts in the light most favorable to Plaintiff, *see esp. Saucier*, 533 U.S. at 201, Bland is not entitled to qualified immunity.

## V.

The majority has dissociated itself with the remarkable facts of this case. As I have endeavored to explain, genuine issues of material fact abound. Was it reasonable for Bland to charge at Lee with his gun drawn, giving Lee no meaningful chance to submit to Bland's authority? To allow only 2.5 seconds for Lee to consider the instruction to exit the car and, moreover, to force Lee to consider this instruction while facing an advancing policeman with a gun trained directly at him? To continue full-speed upon arriving at Babb's car and to plunge through the passenger window with the gun still in hand and his finger pressing on the trigger? The case law and the record suggest some or all of these decisions may not have been reasonable under the circumstances of this case and, furthermore, that a reasonable officer would have known it. A trial is required. I therefore dissent.